## Edmiston v. Robinson et al.

Feb. 12, 1943.

274

Jay W. Harlan and Kelly J. Francis for appellant.

Edward J. Hogan, Edwin O. Davis and Pat Rankin for Robinson.

Stanley Badesch and Herbert Reynolds for Huddleston.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part and reversing in part.

The appellant and plaintiff below, Roy Edmiston was injured when the automobile of John Huddleston in which he was riding collided with that of Denver Robinson, and he brought this action against the defendants Robinson and Huddleston alleging that his injuries resulted from their joint negligence in the operation of their automobiles. The verdict was in favor of the de-

fendants and the plaintiff appeals from the judgment entered thereon dismissing his petition.

Edmiston was 21 years of age and a student in Center College at the time of the accident on July 26, 1941. It was Saturday and he was "hitch-hiking" to his home in Crab Orchard, Ky. On U. S. Highway 150, at the outskirts of Danville, he was given a ride by the defendant, Huddleston, and got in the back seat between two others persons, one of whom, Thomas Pettus, was an acquaintance of plaintiff. After Edmiston entered the car Huddleston drove at a speed of from 50 to 60 miles per hour, and in going around a sharp curve at a rock quarry some five minutes before the accident the car skidded. Edmiston asked him to slow down, which he did. From this curve to the scene of the accident was about five miles. There was nothing unusual in Huddleston's driving covering that distance and Edmiston and Pettus both testified that he kept on his side of the road "as much as an ordinary driver."

Approaching from the south was Robinson's automobile which was traveling at approximately the same speed the Huddleston car was making, between 50 and 60 miles per hour. Robinson and the occupants of his car had been up all night on a trip from Salem, Indiana, to the Smoky Mountains and were returning home. The only sleep any of them had was what they had gotten in the car. At Mount Vernon, some 50 miles from the accident, Robinson surrendered the wheel to his brother-in-law, Raymond Martin, a 19-year old boy, who was driving when the collision occurred and Robinson was asleep on the rear seat.

There is but little contrariety in the evidence as to how this accident occurred. The pavement was 19 feet wide with a white line in the center and a 4 foot berm on each side. The Huddleston car was proceeding south while the Robinson car was going north, and the road was straight for a distance of 1,200 feet from the point where the two cars came into sight of each other. On the east side of the road between the berm and a rock fence was a ditch estimated to be from 18 inches to 3 feet deep, while there was a wire fence beyond the berm on the west side. Although there was no traffic or other objects to obstruct the view between the two cars, neither driver noticed the approach of the other until they were from 100 to 150 feet apart.

Petie Glenn, a friend of Huddleston and seated beside him, asked a question and Huddleston turned his head to answer, and as he did so his car turned across the center line onto the east side of the highway. Martin then saw it for the first time and at the same instant Huddleston saw the car Martin was driving. As each car was approaching at a speed from 50 to 60 miles an hour, it is evident they traversed the intervening 100 to 150 feet between them in about one second. Huddleston attempted to pull his car back to his side of the road, applying his brakes and leaving skid marks for 30 feet on the east side of the center line. Martin, seeing Huddleston's car suddenly change its course to his (east) side of the road, turned his car to the left in an effort to avoid the collision, applying his brakes and leaving skid marks on the east side of the road for 30 feet. It is rather unusual that each car skidded the same number of feet. The cars collided near the center of the pavement. The evidence is to the effect that Martin could not have passed the Huddleston car safely by remaining on his (east) side of the highway.

It is beyond cavil that Huddleston was negligent in turning his head to speak to Glenn and letting his car go to his left of the center line of the pavement. Was Martin negligent in attempting to avoid colliding with Huddleston's car by turning to the left, thereby putting his car on the wrong side of the highway when there was not room on the highway for him to pass to his right of the Huddleston car?

In the third instruction the court properly submitted to the jury in appropriate form whether Martin was exercising ordinary care in the operation of the Robinson car and whether his speed in excess of 45 miles per hour, considering traffic conditions, was improper driving. No reference to contributory negligence on the plaintiff's part was made in the instructions concerning Robinson's liability, because it is evident any negligence on the part of the plaintiff in riding with a careless driver could not have contributed to the accident insofar as Robinson was concerned.

Instruction No. 5 told the jury in substance that if Martin was exercising ordinary care in driving the Robinson car and that Huddleston suddenly crossed on Martin's side of the pavement causing the latter to be con-

fronted with an emergency and that in the exercise of a reasonable judgment Martin crossed to his left of the pavement to avoid a collision, then the law was for defendant Robinson. That instruction was correct. One who by another's negligence is placed in a position of peril and thereby compelled to act in the emergency is not held to the same strict rule in the exercise of ordinary care required of one not facing danger. In such circumstances one may take the course which appears safest and if he injures another in so doing, he will not be held liable for the accident if his conduct measures up to the standard of ordinary care in the circumstances confronting him, although the course he follows to prevent the accident was the wrong one. 45 C. J. 710, Section 92; Moreland's Adm'r v. Stone, 292 Ky. 521, 166 S. W. (2d) 998; Chesapeake & O. Ry. Co. v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10. Robinson insists that under this record he was entitled to a directed verdict. Since the jury found in his favor and there will not be another trial as to Robinson, we are not called upon to decide this question and desist from so doing.

The criticism of instruction No. 3 is that it did not require Robinson to operate his car on his right side of the highway. Such criticism is not well taken in view of the uncontradicted testimony that he was on his proper side of the highway until Huddleston created the emergency by driving his car to the left side thereof. As indicated in the preceding paragraph, instruction No. 5 covered the situation of the Robinson car pulling to its left of the center line when the emergency arose.

The first instruction is vigorously attacked by plaintiff for its failure to enumerate all the duties the law imposed on Huddleston in the operation of his car. Apparently plaintiff loses sight of the fact that it is a peremptory instruction in his favor because of Huddleston's admitted negligence in driving his car to the left of the center line. It directed the jury to find a verdict in favor of plaintiff against Huddleston unless they believed from the evidence plaintiff was guilty of contributory negligence as defined in the second instruction. In effect the second instruction told the jury that if Huddleston, after plaintiff got in his car, repeatedly drove to the left of the center line of the highway when it was dangerous to do so and that plaintiff saw, or by the exercise of ordinary care should have seen, that Huddleston was op-

erating his car in such manner a sufficient time before the accident to have enabled plaintiff to insist that he desist from so driving his car, or stop the car and permit planitiff to alight, and plaintiff failed to speak or act, then he was guilty of contributory negligence and the law was for the defendant Huddleston.

This second instruction correctly embodied the law on contributory negligence. But the question is, was there any evidence upon which to base it? As previously mentioned in the opinion, Huddleston took a sharp curve too fast, causing his car to skid, whereupon plaintiff complained and Huddleston slowed down. That was several miles and about five minutes before the accident occurred. The testimony of plaintiff and Pettus is to the effect that after this incident Huddleston drove in an ordinarily prudent manner and to use Pettus' words Huddleston was on his proper side of the road "as much as an ordinary driver, I suppose. * * * Every one doesn't drive on the right side of the road all the time, the best of my recollection." When plaintiff was asked on cross-examination how much of the time Huddleston drove on the left of the highway before the accident, he replied he could not state. He was then asked if he would say it was as much as 50%. He replied in the negative. When asked if it was as much as 25%, his reply was, "Well, maybe that much." This was too indefinite upon which to base an instruction upon contributory negligence. Certainly, if between the curve and the scene of the accident Huddleston drove in the manner of an ordinarily prudent driver, it was not incumbent upon plaintiff to complain further, and his failure to do so did not raise the question of his contributory negligence to be submitted to the jury.

As there was no testimony forming the basis for the court to instruct on contributory negligence on the part of plaintiff, such an instruction should not have been given. Haller's Pet Shop v. Pearlman, 253 Ky. 130, 69 S. W. (2d) 9; Consolidated Coach Corp. v. Saunders, 229 Ky. 284, 17 S. W. (2d) 233. It was reversible error to do so since the verdict against plaintiff of necessity was bottomed upon this contributory negligence instruction as the court had peremptorily instructed the jury to find for him unless it believed his negligence contributed to the accident.

On another trial, should the evidence be substantial-

ly the same as that adduced on the first, the court will direct a verdict in favor of the plaintiff against Huddleston and submit only the measure of damages to the jury in effect as it did in the sixth instruction.

The judgment is affirmed as to defendant Robinson and reversed as to defendant Huddleston for proceedings consistent herewith.