# Remmers' Ex'r v. Mayhugh.

May 21, 1946.

Rehearing denied December 13, 1946.

Finley F. Gibson for appellant.

Edward J. Hogan for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Action below was by appellant to recover damages for the death of Mrs. Rose Remmers, at the time about seventy-two years of age, caused, it was charged, by the negligence of appellee while driving his automobile. Issue was joined by answer in general denial, a plea of contributory negligence and reply in denial. Nine of the jury signing, returned a verdict for defendant and judgment was entered accordingly.

On appeal it is urged that the court erred in refusing peremptory instruction for appellant at the close of all evidence, because appellee's evidence showed negligence on his part; that the court failed to tender a jury as provided by statute, and the clerk failed to perform his statutory duty in perfecting a panel; finally that some instructions given by the court sua sponte were erroneous and prejudicial.

It is stated in appellant's "additional grounds for new trial" that the court erred because in the tendered panel of 18 jurors only 15 were drawn from the wheel; that there were present more than 18 jurors of the regular panel at the time; that after each party had challenged there were left on the jury the three bystanders, and plaintiff did not learn of the facts until after discharge of the jury. The second technical ground is: "Because in the empaneling the jury the clerk of the court failed to perform his statutory duties in selecting the jurors constituting the panel."

In appellant's brief, on the first contention, the grounds set up above are restated. In elaborating the second ground it is said that the names of jurors listed appeared in alphabetical order. We find this to be correct, and we are asked to conclude that the clerk merely made the list from some paper; that had he drawn from the box slips containing the names of 18 jurors they

would not have come out in alphabetical order. It is contended that he did not draw the slips as required by Section 29.270 KRS.

We have held that every litigant has the right to have tendered to him a list of 18 qualified jurors from which to select, and if this rule is violated his rights have been violated. Louisville & N. R. Co. v. King, 161 Ky. 324, 170 S. W. 938; Louisville & N. R. Co. et al. v. Owens, 164 Ky. 557, 175 S. W. 1039. In the last case we reversed because the jury was made up of too many bystanders, and the whole panel was not selected as required by statute, the questions being properly saved by motion to discharge the panel. In the King case where we held error in tendering a panel with eight bystanders, timely steps were taken to raise the question and save the point. In Winchester v. Watson, 169 Ky. 213, 183 S. W. 483, we held error in drawing a new panel from twenty summoned bystanders where there was objection to the order directing the sheriff to summon, and a motion to discharge the panel for cause, with timely exception to adverse rulings.

We do not challenge appellant's statements as to the charged irregularities. It is accepted as true, as well as the statement that the facts were not discovered until after the jury was discharged. The trouble is that there is nothing in the bill of exceptions or transcript to show that the matters complained of were brought to the trial court's attention, we must therefore assume that the court and the clerk followed the applicable laws. In Belcher v. Sandy Valley, &c., 207 Ky. 560, 269 S. W. 729, 731, complaint was that seven bystanders served. In answering a like contention we said: "In the first place, that fact is not properly manifested in the record, since it is only contained in the motion for a new trial, there being nothing relating to it in the bill of exceptions. However, if the question were properly before us, it could not be sustained, since it was the duty of the plaintiff to have ascertained that fact and relied on it by proper motion before the return of the verdict. The records of the court necessarily revealed the names of the jurors who had been accepted as bystanders, and the slightest diligence would have enabled plaintiff to discover that fact, and he will be charged with notice

thereof, * * * he * * * will not be allowed to take advantage of it for the first time on a motion for a new trial.''

The court and its officers are presumed to have properly performed their statutory duties. Young v. Commonwealth, 275 Ky. 98, 120 S. W. 2d 772. When attack is made on this score, the contrary must be clearly and convincingly shown.

The accident occurred about 6:45 a. m., March 3, 1944, as Mrs. Remmers was attempting to cross from one side of Lexington Road, approximately 100 feet east of Cannon's Lane, which intersects Lexington Road. She had left her son's home to attend mass at a church located on Cannon's Lane. Lexington Road is about 40 feet wide and curves very slightly (5 degrees) as you come to Cannon's Lane eastwardly.

Charles English and his daughter were at the time on the way to church, and were crossing the street at an intersection with Eline Avenue. Mr. English said it was just getting daylight; the street lights were still on, automobile lights were burning, and he could see for a distance of three or four hundred feet. When he first observed Mrs. Remmers he assumed that she had walked out of a driveway (not intersection) between Eline Avenue and Cannon's Lane onto Lexington Road, and was 6 or 8 feet from the curb. He could see Mayhugh's car at the same time. Mrs. Remmers continued towards the opposite side of the street and reached near the center and when the horn was sounded, ''She started to run, hesitated and then started to run again towards the north side. The best I could tell she disappeared from the view of the lights; she may have been struck by the front fender, a glancing blow, but I think the back fender is the sound that I heard. * * * The automobile was on the left side of the line, and she was a little bit north of the center line of the street, and when we picked her up she was lying about the same distance from the center line.''

The daughter testified to about the same situation, but said it was ''foggy.'' She thought Mayhugh's car went to the left ''to avoid hitting her.'' The traffic officer who went to the scene after a radio call at 6:49 a. m. described the lay of the streets. He examined the skid marks and the car. He said the only indications of impact were brush marks on the right front fender, and back

towards the rear of the fender. The officer concluded from a variance in skid marks that Mayhugh's brakes were defective. He testified that under ordinary circumstances as to condition of car and road, a car traveling 30 miles per hour would travel 44 feet per second. Assuming that Mayhugh's action was normal, by reaction from the time he might see an object, he should have put his foot on the brake in three-fourths of a second, traveling in that time 33 feet. If the brakes worked all right he would have traveled 49½ feet before his car would stop; the two added would be the distance in which under usual circumstances the car should have stopped. The reaction here required a determination as to whether he should pull his car to the right or left, figuring on what Mrs. Remmers might do.

Appellee was employed as manager of a dairy plant six miles east of St. Matthews. He said the accident occurred around 6:45 a. m.; that as he approached Cannon's Lane he was driving about 30 miles per hour on the right side of the street following the center line past Cannon's Lane. He said he was following the center line coming up through the curve. "As I passed the intersection I straightened my car, and I observed someone directly in the line of my car. I immediately sounded my horn, and she momentarily stopped, hesitated, and as she did I gave way to the left, and as I did she started, picked up her speed, jogged a little bit, and I immediately put on my brakes, and in doing so I was thrown to the left side of the center line, and when I stopped my rear wheel was just past the center line, and she ran into the right front fender of my car, and when I stopped her body was to my rear wheel, lying approximately over the center line." He said his car stopped in less than a car length after the impact, and that "coming up this lane of traffic you are completely past the intersection before your lights are on a straight beam again, and as you pass this corner here, even going at 30 miles per hour, 44 feet per second would mean that from the time that I observed her, I had approximately between one and two seconds to do what I had to do." He said Mrs. Remmers was 5 feet from the center line on his side when he blew his horn, and gave way to the left, because she was directly in my line of traffic. He touched the brake, but could not say whether it was at the instant he sounded

his horn or not, because it happened so quick. His headlights were in good condition, and his brakes had been adjusted ten days prior to the accident. He had never tried to check the speed of his car under similar conditions, but expressed the opinion that on a sudden stop "it is hard for all four wheels to grab simultaneously." When he stopped he assisted in placing the body on the sidewalk, and placed his overcoat over it.

In reference to the skid marks, observed by the officer, he said they were not made by his car, but were near the point of impact, and in the center of the road; he was emphatic that he did not skid for a distance of 89 feet. He admitted that he was familiar with the street, as he had traveled it seven days a week for many years. His cross-examination seemingly emphasized his direct testimony. A repair man testified that he had adjusted Mayhugh's brakes on February 22nd and had tested them several days after the accident and found them in good condition. This testimony is recited because of the mild claim of appellee that Mayhugh was negligent because he was driving with brakes known to be defective.

The argument of appellant's counsel in support of his contention that the court should have given a directed verdict is based chiefly on the ground that the proof showed appellee was not keeping proper lookout. Were it not for the fact that there was a plea of contributory negligence with substantial supporting evidence, the argument would be of more merit.

Mrs. Remmers had crossed this highway many times in going to her church and was familiar with the situation. The accident happened without doubt in the way described by Mr. English and appellee. It seems to us to be a case where Mrs. Remmers became confused at the sound of the horn, hesitated and then started at a brisk pace after Mayhugh had sounded his horn, and pulled to his left, as he says, and Miss English said it seemed to her, to avoid striking deceased while in his lane.

In the instant case appellee was acting in an emergency. It may be that he should have pulled to his right rather than to the left, but one who acts in an emergency is not held to the same strict rule in the exercise of ordinary care required of one not facing a dangerous situation. In such circumstances one may take

what appears to be the safer course, and if in so doing he injures another, he will not be held liable if his conduct measures up to the usual standard of ordinary care, "although the course he follows to prevent the accident was the wrong one." Edmiston v. Robinson, 293 Ky. 273, 168 S. W. 2d 740, 742, citing cases.

The determination of the question as to whether appellee exercised the proper lookout, or was driving at the time knowing that his brakes were defective, were according to many of our decisions matters for the determination of the jury. Likewise was the question as to whether deceased in violation of Sec. 189.570(4) KRS, or otherwise, was or was not guilty of contributory negligence as a matter of fact. Murphy v. Homans, 286 Ky. 191, 130 S. W. 2d 14; Wilder v. Cadle, 227 Ky. 486, 13 S. W. 2d 497. The prevailing rule is to the effect that the trial court is not justified in taking the case from the jury unless facts are not in dispute, or the proof is such that fair-minded persons might not differ about them. Beiser v. C. N. O. & T. P. Ry. Co., 152 Ky. 522, 153 S. W. 742, 43 L. R. A., N. S., 1050, cited with approval in the Murphy-Homans case. We are of the opinion that the court was not in error in overruling appellee's motion for a directed verdict.

The final contention is that the court erred in giving instructions 2-a and 3. The court instructed in 2-a that it was the duty of deceased when crossing between intersections to yield the right of way to approaching cars. Statute, supra. This is based on the argument that deceased was under no duty to yield the right of way, because the proof showed that she had already yielded before she was struck. While the evidence shows that Mayhugh was driving, following the center line of the curve, he said that after leaving the curve he straightened his car, and was apparently about 5 feet from the center line in his proper lane, and there is no doubt but that when he saw Mrs. Remmers she was in the lane on Mayhugh's side. But we need not further discuss this point since we note that appellant offered an instruction, which in substance told the jury that it was the duty of Mrs. Remmers to yield as provided by the Statute. Having invited the instruction he should not be heard to complain of the one given by the court, though we are not suggesting that it was erroneous or prejudicial.

We have carefully analyzed instruction No. 3 and find it not objectionable. Counsel contends that this instruction placed other and further duties on Mrs. Remmers, by saying that if the jury should believe from the evidence that it was more dangerous to cross the street between intersections, then it was her duty to exercise increased care, commensurate with the increased danger involved, if any. The objection is that the court over-emphasized decedent's duties. We cannot agree with appellant's counsel. The mere statement that the pedestrian when crossing a street between intersections must "yield," does not fix the degree of care, or point out the extent to which the yielding must go.

Instruction No. 3 merely explained the extent of yielding, and set out more fully the duties of the pedestrian thus crossing the street. This instruction amelioriated rather than emphasized the duties of decedent. The court told the jury that if decedent saw, or by the exercise of care, could have seen the approaching car, she should not have attempted to cross the street in front of defendant's car. A reference to Louisville Taxicab Co. v. Byrnes, 296 Ky. 560, 178 S. W. 2d 4, where there was injury to a pedestrian crossing between intersections, will show that the court below followed the instruction on contributory negligence, approved in that case almost verbatim, and said that the court should have instructed on the duty of the pedestrian to yield the right of way when crossing a street between intersections.

We have carefully examined the whole set of instructions as given by the court, and can perceive no fault in the whole or in any of them. It follows that finding no error we are compelled to affirm the judgment.