**Hayden Eugene RUEHL et al., Appellants,**

**v.**

**Mildred HOUCHIN et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 26, 1965.

---

1. The same considerations apparently would apply where reformation was sought on the ground of fraud.

James F. Clay, Sr., James F. Clay, Jr., Danville, for appellants.

P. Joseph Clarke, Jr., Danville, for appellees.

DAVIS, Commissioner.

This appeal stems from a collision between automobiles driven by appellee Mildred Houchin and appellant Hayden Ruehl. Appellee Levi Engle was the owner of the Ford driven by his daughter, Mildred Houchin; the Buick driven by Hayden Ruehl was jointly owned by him and appellant Donna Ruehl. The judgment, pursuant to the jury's verdict, awarded $9,483.56 to Mildred Houchin for her personal injuries and $850 to Levi Engle for property damage. The counterclaims of the appellants for personal injury to Hayden and property damage were dismissed.

The appellants maintain that the trial court erred (1) in refusing an offered instruction presenting appellants' theory of the case, (2) in making improper comment upon the evidence, and (3) in the instructions given.

The accident occurred in the early afternoon on a clear day in January, 1963. Ruehl was driving the Buick car eastwardly on Ky. Highway No. 34 toward the community of Parksville. In general, the road extends from east to west. Mrs. Houchin backed her father's Ford from his driveway, situated on the south side of the highway, preparatory to driving it in a westerly direction toward Mitchellsburg. According to her version, Mrs. Houchin backed the Ford across the road and headed it westwardly toward Mitchellsburg; she maintains that she did not stop the car in the eastbound traffic lane at all.

On the other hand, it is the contention of appellant that Mrs. Houchin so backed the Ford as to bring it to rest in the eastbound lane (appellant's proper driving lane). Appellant testified that when he rounded a curve, some 766 feet west of the driveway from which Mrs. Houchin backed, she had backed the Ford in such position as to completely block his lane of traffic. At that time, appellant said, he "imagined" he was traveling fifty miles per hour; he slowed his car by releasing his foot from the ac-

·celerator, but did not then apply the brake. Appellant supposed that the Ford was stalled, since "she just set out there." Thereupon, when appellant was within two ·or three hundred feet of the Ford, he decided to pass the Ford by pulling his car to his left. He said that he sounded his horn, ·and "tapped his brake" just before he began to pull to his left; that he then increased his ·speed "just for an instant." Then, according to appellant, Mrs. Houchin drove the Ford partially into the westbound lane. Thereupon, appellant applied his brakes ·hard; he laid down skid marks 171 feet long just before the impact. The point ·of impact, according to all the evidence, ·was five feet north of the center line —that is, five feet into the proper lane for Mrs. Houchin and the lefthand lane for ·appellant. After the collision the Ford ·came to rest on the south side of the road, ·at a point 48 feet from the point of impact; ·the Buick traveled 52 feet and off the road on the north side after the collision. The ·cars were demolished; Mrs. Houchin and Hayden Ruehl sustained extensive personal ·injuries. Appellants lay particular stress on the physical evidence which tends to indicate that the main force of the impact to each car was sustained in the right front portion of each. From this, it is reasoned that since the width of each car was more than six feet, necessarily the Houchin car had to be partially in Hayden Ruehl's lane, and that a portion of the Ruehl car remained in its own righthand lane when the collision occurred.

For the appellees there was evidence indicating a very high rate of speed on the part of appellant; other evidence for appellees tended to show that Hayden Ruehl had consumed a substantial quantity of beer shortly before the accident.

■ For the purpose of testing whether appellant was entitled to a "sudden emergency" instruction, we will view the evidence in the light most favorable to him, as the jury had a right to do. Even so, it is our conclusion that the circumstances here shown fail to reflect facts warranting such an instruction.

■ Appellants rely on Phipps v. Bisceglia, Ky., 383 S.W.2d 367; Agee v. Hammons, Ky., 335 S.W.2d 732; Edmiston v. Robinson, 293 Ky. 273, 168 S.W.2d 740; Remmer's Ex'r v. Mayhugh, 303 Ky. 366, 197 S.W.2d 450; and V. T. C. Lines v. Murray, 309 Ky. 643, 218 S.W.2d 675. Examination of these cases reveals that factually they differ from the case at bar. Without detailing the facts of each of the cited cases we note that in none of them did the "emergency" arise two or three hundred feet ahead of the motorist, as is the situation at bar. In fact, when the appellant rounded the curve, according to his own evidence, he saw the Ford car in his lane of traffic. It is quite obvious that he was then on notice that further driving would entail some negotiation of his own car with respect to the Ford. When he proceeded for four or five hundred feet, and then decided to turn to the left, he did so because he had considered that course to be the proper one—certainly he did not do it as a matter of last minute emergency. Accordingly, the trial court properly refused to instruct on "sudden emergency."

■ The claimed error respecting alleged improper comment by the trial judge is not properly before us for review. Appellants designated a partial record pursuant to CR 75.01 and appropriately served with the designation a statement of points as prescribed by CR 75.04. Among the seven enumerated points so stated was no reference to the asserted error of the trial judge's comments during the trial. Under this state of the record the point is not preserved for appellate review; accordingly, we do not pass upon the question which is thus improvidently urged. Cf. Travelers Indemnity Insurance Co. v. Patrick, Ky., 386 S.W.2d 256, (decided October 16, 1964); Dunson v. Swiggum, Ky., 280 S.W.2d 510.

■ Evidence was heard tending to prove that Hayden Ruehl was under the in-

fluence of intoxicating beverage at the time of the accident. In instructions to the jury the trial court defined "ordinary care" as the degree of care "that a sober person of average prudence uses under conditions the same or similar to those shown in this case." In defining the duties of appellant Hayden Ruehl, the court instructed the jury that Ruehl's duties included the obligation, among others, " * * * to exercise the care that an average prudent and sober man would exercise under like circumstances * * *." Another duty of Ruehl was defined as "Not to drive his car upon the public highway while under the influence of alcohol." Our decisions support the proposition that it is correct to instruct the jury—when an issue relating to intoxication is in evidence—that the standard of care is gauged by the standards applicable to a sober person. See Meadows v. Bailey, Ky., 350 S.W.2d 630; Wootton v. Dixon, 312 Ky. 521, 228 S.W.2d 428; B–Line Cab Co. v. Hampton, Ky., 247 S.W.2d 34; Whittaker v. Thornberry, 306 Ky. 830, 209 S.W. 2d 498; Hatfield v. Sargent's Adm'x, 306 Ky. 782, 209 S.W.2d 306; and Stanley's Instructions to Juries, 2d Ed., § 589. We think it is appropriate, in such cases, to include in the definition of "ordinary care" the phraseology contained in § 589, Stanley's Instructions to Juries, 2d Ed. Better practice would be to limit the reference to sobriety to that one instruction defining "ordinary care." Thereafter, all references to "ordinary care" in the instructions will encompass the definition, so that further repetition of it will not be required.

However, in the instant case we are not persuaded that the additional references to the standard of a sober person rise to the level of prejudicial error. As abstract propositions of law, the instructions were correct. We regard as sound, and applicable here, the statement written in § 17a, Stanley's Instructions to Juries, 2d Ed.:

"Abstract instructions which clearly state legal principles in a general way are not in themselves iniquitous. .

Although they are improper and technically erroneous, the giving of such instructions is not generally regarded as prejudicial error. They may be erroneous, however, if they appear to have been misleading or the statements were inapplicable to the issues in the case."

We are unable to perceive that the instructions here challenged were misleading or inapplicable to the issues in the case.

The judgment is affirmed.