# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 22, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0262-MR

IRVIN HARRIS                                                               APPELLANT

                      ON APPEAL FROM HARLAN CIRCUIT COURT
V.                         HONORABLE KENT HENDRICKSON, JUDGE
                                 NO. 21-CR-0009

COMMONWEALTH OF KENTUCKY                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Irvin Harris ("Harris") was convicted of murder by a Harlan County Circuit Court jury for causing the death of Gavin McClain. Harris was sentenced to 20 years in prison and appeals to this Court as a matter of right.[1] On appeal, Harris claims the trial court abused its discretion by failing to provide a defense-of-others jury instruction based on KRS[2] 503.050, 503.055 and 503.070. Finding no reversible error, we affirm the Harlan Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 2, 2021, Destiny Harris ("Destiny") complained to Irvin Harris ("Harris"), her father, that she had faced harassment at the hands of

---

[1] KY. CONST. § 110(2)(b).

[2] Kentucky Revised Statutes.

several individuals at her apartment, all members of the Fields family, with whom Destiny had been in an ongoing verbal dispute for the previous two years. Harris contacted Kentucky State Police (KSP) to report the incident and request assistance to escort Destiny to her apartment. Harris was unable to receive assistance, however, and decided to accompany Destiny back to her apartment complex.

Upon the Harris' arrival at Destiny's apartment complex, an argument between Harris, Destiny, and various Fields family members escalated into a physical altercation outside of Destiny's apartment. Among those engaged in the altercation was Michael Couch, the boyfriend to Octavia Fields, who engaged in a physical fight with Harris. Both Destiny and Harris claimed they suffered minor injuries from the altercation, although photographs of the two showed no visible injuries following the fight. Once the fight concluded, Harris returned to his vehicle to sit for a short time before returning to the area where the fight occurred. Harris returned to the area with a 9mm pistol in hand.

As Harris made his way back to the crowd of people, several onlookers noticed the pistol and called to Harris to stop, which Harris did not. Harris then witnessed a man, who he believed to be Michael Couch, standing in front of Destiny with his back turned toward Harris. Harris walked up behind the man and, in an alleged effort to protect Destiny, fired one shot into the back of the man's neck. The individual was not Michael Couch, however, but was instead 18-year-old Gavin McClain, a friend of Destiny. Following the shot, McClain fell to the ground. After firing the shot, Harris, with Destiny in tow,

2

fled the scene and returned home. McClain was later taken to a hospital and pronounced dead. KSP then investigated the incident and determined Harris was the responsible party.

On March 3, 2021, Harris was indicted for the murder of McClain. At trial, Destiny testified that she was not fearful of McClain at the time of the shooting, and he was a friend of hers. Harris testified he believed McClain was Michael Couch and that Destiny was in danger. Harris attempted to argue self-defense, protection of another, and mistaken identity of the victim. The trial court provided jury instructions on murder (including first-degree manslaughter, second-degree manslaughter, and reckless homicide) and self-protection. Harris requested a protection of another instruction as well. The trial court denied Harris's request.

The jury returned a guilty verdict on Harris's murder charge. Following the jury's recommendation, the trial court sentenced Harris to 20 years in prison. Harris appeals to this Court as a matter of right.

## II.    ANALYSIS

Harris argues one error by the trial court: abuse of discretion in proffering jury instructions. Harris argues the trial court incorrectly denied his request for a protection of another instruction under Chapter 503, specifically KRS 503.050, 503.055, and 503.070. In doing so, Harris requests his murder conviction be reversed and he be afforded a new trial with the protection of another instruction utilized.

3

In assessing whether the trial court erred in failing to give Harris's requested instruction, we bear in mind:

> A trial court is required to instruct on "every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999) (citing RCr 9.54(1); *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954)). Whether the evidence warranted a requested instruction is viewed in the light most favorable to the requesting party. *Thomas v. Commonwealth*, 170 S.W.3d 343, 347 (Ky. 2005) (citing *Ruehl v. Houchin*, 387 S.W.2d 597, 599 (Ky. 1965)). "A decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom." *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). Ordinarily, "[b]ecause such decisions are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard." *Id.* (footnote omitted).

*Sutton v. Commonwealth*, 627 S.W.3d 836, 848-49 (Ky. 2021).

The protection of another statute provides the use of deadly physical force in defense of another person is justifiable when:

> (a)     The defendant believes that such force is necessary to protect a third person against imminent death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, or other felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055; and

> (b)     Under the circumstances as they actually exist, the person whom he seeks to protect would himself have been justified under KRS 503.050 and 503.060 in using such protection.

KRS 503.070(2)(a)-(b). The statute explains that protection of another includes an inquiry into (1) the defendant's subjective belief that he must protect a third

4

party, and (2) an objective evaluation of the actual scene, including whether the potential victim would have been justified in using the same type of protection.

This Court addressed a defendant's entitlement to a defense-of-another instruction in *Springer v. Commonwealth*:

> If the defender uses non-deadly physical force in protection of another, he is judged by his own subjective belief as to whether the person being protected would have been privileged to act in self-protection. KRS 503.070(1). However, if, as here, deadly force is used, the defender is judged in accordance with the circumstances as they actually existed with respect to whether the person being protected would have been privileged to use deadly physical force in self-protection.

*Springer v. Commonwealth*, 998 S.W.2d 439, 455 (Ky. 1999).

As applied to this case, the defendant's subjective belief is the first prong of KRS 503.070(2). Here, Harris satisfied that prong because he believed Destiny was in imminent danger from an individual who allegedly assaulted Destiny and her father earlier in the day. Harris believed action was necessary to protect Destiny from "serious physical injury . . . or other felony involving the use of force." KRS 503.070(2)(a).

However, Harris cannot satisfy the second prong. As noted in *Springer*, to satisfy this prong under the circumstances *as they actually existed*, Destiny herself must have been justified in using deadly physical force under KRS 503.050. Pursuant to that provision, Destiny (and by extension Harris) would only be justified if Destiny "believe[d] that such force is necessary to protect h[er]self against death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055." KRS 503.050(2). Here,

5

Destiny, whom Harris claimed he was attempting to protect, would not have been authorized to use deadly force to protect herself. Destiny testified that she had not perceived McClain as a threat at the time of the incident. On the contrary, McClain was a friend of Destiny's. McClain had not been involved in the physical altercation and no evidence was presented that McClain was in possession of a weapon at that time. As Harris moved towards McClain with the pistol raised, Destiny even shouted for Harris to stop. Destiny was clearly not fearful of McClain at the time of the fatal shooting and therefore would not have been justified in using deadly force to protect herself from him. The situation presented no evidence that Destiny would have been justified in using deadly physical force against McClain. By extension, under KRS 503.070(2)(b), Harris was unable to satisfy the second prong entitling him to a protection of another jury instruction. The trial court did not abuse its discretion when it did not so instruct the jury.

Harris's contention that KRS 503.055 creates a new path to a protection of another instruction is without merit. KRS 503.055(3) provides,

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

Although this statute provides a new basis for which deadly force can be used for the protection of another, it does not supersede the two-prong test set forth in KRS 503.070(2). A reading of KRS 503.050, 503.055, and 503.070 together

6

makes this clear. KRS 503.070(2)(a) cross-references KRS 503.055. KRS 503.070(2)(b) allows deadly force in defense of another if the person to be defended would be able to use deadly force under KRS 503.050. KRS 503.050 in turn allows the use of deadly force in self-protection, "under those circumstances permitted pursuant to KRS 503.055." KRS 503.050(2). And KRS 503.055 allows deadly force in the scenarios recited above. Harris is correct that KRS 503.055 does factor into the analysis, but he is incorrect that it changes the outcome; under KRS 503.055, Destiny still would not have been justified in shooting McClain as required for Harris to satisfy the second prong of KRS 503.070(2).

## CONCLUSION

For the foregoing reasons, the judgment of the Harlan Circuit Court is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., concur. Thompson, J., concurs in result only without separate opinion.


COUNSEL FOR APPELLANT:

Russell Alred


COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General