## Gibraltar Coal Mining Company v. McCown.

(Decided February 2, 1932.)

282

EAVES & SANDIDGE for appellant.

W. C. JOHNSON and HUBERT MEREDITH for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

In an action for damages for personal injuries sustained while at work in a mine of the Gibraltar Coal Mining Company, Louis McCown recovered judgment for $1,700, and the company has appealed. As grounds for reversal, it is urged that the trial court erred in admitting incompetent evidence and in instructing the jury.

Appellee who was employed as a coal loader by the company was injured by falling slate. At the time he received his injuries, he and his brother were engaged in loading coal near the face of the coal in a room about 125 feet in depth.

It is contended by counsel for appellant that the court committed a prejudicial error in permitting the witnesses Lee Nelson and John Lacefield, who were introduced by appellee, to testify, over appellant's objection, as to the unsafe condition of the roof of the 125-foot room at points other than where appellee was performing his work. Before these witnesses were called, however, appellee and his brother had been permitted to testify, without objection, as to the condition of the roof back of where they were at work. In fact, some of their evidence related to the condition of the roof for the entire length of the room. These men had been working in this room for something like four months, and counsel for appellant brought out on cross-examination that the roof had been "drummy" all the time. There was other evidence brought out by both parties, and to which there was no objection, that the roof was "drummy" or rotten, and also evidence as to the character of timbering and propping required at other points in the room. Under all the circumstances of this case, we are not prepared to

say that this evidence was incompetent; but it is wholly unnecessary to determine that question, as it clearly was not prejudicial, because evidence bearing on the very same question had already been admitted without objection.

The basis for the argument that the court erred in instructing the jury is that instruction No. 1 given by the court is erroneous, and that the court erred in not giving instructions A and B offered by appellant. There is evidence that, where a roof was known to be rotten or "drummy" and unsafe, the company had timber men whose duty it was and who did undertake to do the timbering or propping of the roof. There is evidence that the room boss had directed appellee to proceed with his work, and told him that the company would have its timber men do the necessary bracing; that men had been sent into this room and had discovered cracks and defects in the roof, and had undertaken the duty of properly timbering and bracing it.

Quint Thompson was introduced as a witness for appellant and testified that he was assistant foreman, and was sometimes known as room boss. On direct examination, he testified that he did not remember telling McCown and his brother that he would send timber men in to make their room safe, but on cross-examination he testified that the roof had been unsafe in most of the rooms. On page 79 of the transcript of the evidence, we find the following questions propounded to this witness, and his answers thereto.

"Q. 11. Now you did tell McCown and his brother that you were going to send a timber-man in there to attend to the roof, didn't you? A. I think I did.

"Q. 14. Well, what was his duty when the Bank Boss told him that he would have the timber-men to timber the roof? A. What was his duty? You mean what was his duty to do after he was told—

"Q. 15. That the timbermen would attend to the roof? A. Well, after it was timbered it would be his duty to load the coal."

So without going into further detail or the setting out of this long instruction, we deem it sufficient to say

that it fairly and clearly presented to the jury issues made by the pleading and proof.

While the record discloses that the court gave instructions 1, 2, 3, 4, and 5, only instructions 1 and 2, and instructions A and B offered by appellant and refused by the court appear in the bill of exceptions or in the record. Assuming without deciding that the evidence in this case warranted the giving of instructions A and B or instructions similar thereto, this court would still be without authority to reverse the judgment because of the lower court's refusal to give these instructions, since all of the instructions given do not appear in the record. Unless there is something in the record to the contrary, it will be presumed that a verdict is returned by a properly instructed jury. It is a well-established rule in this jurisdiction that a judgment will not be reversed because of improper instructions unless all the instructions are included in the bill of exceptions or in some part of the record and properly identified by order of the court. Crofton v. L. & N. Ry. Co., 177 Ky. 831, 198 S. W. 229; Beavers v. Bowen, 70 S. W. 195, 24 Ky. Law Rep. 882; Higgins' Adm'r v. L. & N. Ry. Co., 38 S. W. 876, 879, 18 Ky. Law Rep. 899; Nave v. Riley, 146 Ky. 276, 142 S. W. 388.

In the case of L. & N. Ry. Co. v. Finn, 16 Ky. Law Rep. 57, it was held that there can be no reversal on account of an error in instructions appearing in the record, when some of the instructions have been omitted therefrom, as such error may have been cured by the instructions given, but omitted from the record.

Judgment affirmed.