Aubrey **BOURLAND**, Appellant,

v.

Edna **MITCHELL** et al., Appellees.

Court of Appeals of Kentucky.

May 13, 1960.

Nichols & Nichols, Madisonville, for appellant.

Moore & Morrow, Madisonville, Nathan B. Cooper, Owensboro, Gordon, Gordon & Mills, Madisonville, for appellees.

MOREMEN, Judge.

Appellee, Edna Mitchell, recovered judgment for damages for personal injuries and medical expenses in the sum of $8,000. Her husband, Herman Mitchell, recovered $2,000 for loss of consortium.

The causes of action arose out of an automobile collision which occurred about four o'clock in the afternoon of January 7, 1957, on U. S. Highway 41, just outside the western boundary line of the city of Madisonville. Edna Mitchell was a passenger in a car driven by her sister, Agnes B. Johnson, in an easterly direction toward Madisonville. Appellant, Aubrey Bourland, at the same time, was driving in the opposite direction a pick-up service truck owned

by his employer, Boggess Chevrolet Company.

We are presented with the usual contrariety of testimony as to the facts of the collision.

Bourland testified that he was on a mission in behalf of his employer and had been furnished a pick-up truck for that purpose. He was on the way to the place where the accident occurred and he had made several traffic stops with no indication that anything was wrong with the brakes. Several hundred yards from the point of collision he came up behind a car bearing a foreign license plate and being driven by a woman in the same direction. He followed the car at a distance of 75 or 100 feet. Both cars were being driven at a speed of about 35 miles per hour. As they approached a small bridge on the highway, the driver in front of him suddenly and without a signal other than that given by the brake lights, brought her car almost to a stop. He applied his brakes hard in order to avoid striking it and the left front brake grabbed or locked. The truck swung across the highway into the opposite lane of traffic and collided with the car in which Mrs. Mitchell was riding.

The testimony offered in behalf of appellees was to the effect that the automobile in front of Bourland did not suddenly slow down and stop, that Bourland approached it at a too rapid rate of speed and when he came near it, he lost control of his truck which first swerved to the right and then swung back across the road in the path of appellees' car.

Appellant urges as grounds for reversal that: (1) on voir dire examination the subject of liability insurance was improperly placed before the whole panel; (2) the damages are excessive; (3) a verdict should have been directed for appellant; and (4) errors were committed in the admission and rejection of testimony, and in the instructions to the jury.

■ The record discloses that on voir dire examination of jurors, counsel for appellees inquired of one of the prospective jurors as to his business dealings with the Boggess Chevrolet Company, the employer of Bourland, and the juror stated that he was a partner in an insurance firm that wrote some insurance for them. Counsel then asked whether he wrote liability insurance for the company. Counsel for appellant objected and moved that the court dismiss the jury and continue the case. The motion was overruled and the prospective juror then stated that he wrote only fire insurance for the company.

Appellant relies principally upon Potter v. Trent, Ky., 262 S.W.2d 186, 187, where, upon voir dire examination, counsel, who was well acquainted with two prospective jurors and knew their occupation, questioned them concerning the various types of insurance they wrote and particularly inquired about automobile public liability insurance, but in no way attempted to connect up the fact that they might have an interest in a policy of insurance in that particular case. It was pointed out in the opinion:

"An attorney, when interrogating jurors concerning automobile liability insurance in a case like the one under consideration, is subject to the rule that it must be done to protect some right of his client."

In the case at bar, it is apparent that counsel for appellees was attempting to obtain jurors who had no personal or business interest in the litigation. There is no showing of bad faith and we think the line of questioning was not only proper, but necessary if counsel was to protect his client's interest. Other cases cited by appellant concern deliberate attempts to inject into the evidence during the trial of the case the extraneous matter of insurance, and they have no application here.

■ We do not have the right to pass upon the question of whether the damages

are excessive. Appellant filed no motion and grounds for a new trial as is required by CR 59.01 and 59.06. See Commonwealth, Department of Highways v. Williams, Ky., 317 S.W.2d 482, where this question is thoroughly discussed.

■ Appellant's argument that the court should have directed a verdict in his favor is based, to a great extent, upon the theory that it was the duty of his employer to furnish a truck in good mechanical order, that he failed to do so, and Bourland had no knowledge of the defect until the accident occurred. It is pointed out that all witnesses agreed that the truck swerved suddenly and this physical fact is emphasized to establish that a locked brake must have caused the accident. It is stated that it should not be presumed that Bourland deliberately swerved his truck across the road. However, this argument is predicated upon the idea that the explanation given by Bourland was conclusive, and must be accepted as being true.

In the recent cases of Vernon v. Gentry, Ky., 334 S.W.2d 266, and Shepherd v. Marcum, Ky., 334 S.W.2d 903, each driver explained that the accident was caused by the fact that he was forced off the road by another car, and this evidence was undisputed. The opinions, in effect, held that such explanations are not conclusively binding upon the court or jury. We recognize that both cases involved the doctrine of res ipsa loquitur, but in each case the offending party gave an undenied explanation of how the accident occurred which, if true, would have absolved him from liability. But in each instance the court held that, nevertheless, the case should be submitted to the jury, the inference being that neither the court nor the jury was forced to believe the witness.

Appellee testified as follows:

"Q. Do you know how far he was when you first saw him go off the road on the right or start to weave? A. Yes, he was quite a piece down the road. About 150 feet, I would say, the first time I saw him weave.

"Q. What did his vehicle do then? A. He lost control of it and was trying to get the truck straightened up.

"Q. Was there other automobiles in front of him? A. Yes, sir.

"Q. How close was he to these other automobiles? A. I don't know, but they weren't very far apart.

"Q. At the time he first ran off the road there, had the car immediately in front of him reached you? A. No, it hadn't got to us then.

"Q. Did that car stop there in that lane of traffic? A. No, sir.

"Q. Do you know how far Mr. Bourland was behind that car? A. No, sir, I don't.

"Q. Did you notice Mr. Bourland's truck at all before he ran off the right side of the road? A. No, sir, not until he lost control of the car. We saw him weaving.

"Q. Did that car in front of him slow down suddenly or appreciably slow down? A. No, sir, if it did, I didn't see it.

"Q. Would you have seen it if it had? A. I think so if it had slowed down.

"Q. Do you say it didn't slow down? A. It might have slowed down a little, but not down to five or ten miles. I would say no, it didn't slow down, because the traffic was all going along about the same."

Two other women in the car with appellees testified in similar fashion. The motion for a directed verdict was properly overruled. See Spartman v. Rowlett, Ky., 312 S.W.2d 618, 619.

■ Appellant complains that improper testimony was admitted over his objec-

tions and that certain testimony was excluded which should have been admitted. On direct examination, Iris Crawford, traffic policeman for the Kentucky State Police, was permitted to testify as an expert as to various reaction times of persons confronted with an emergency. Appellant particularly objected to this question:

"Q. If the man was traveling 75 feet behind the car in front of him at 35 miles an hour, he would have been so close to it he could not stop, wouldn't he? A. You have to take into consideration the distance of the car in front of him."

Similar questions were asked and the answers were almost uniformly as vague. We believe this type of evidence was neither helpful to the appellees nor prejudicial to appellant, regardless of whether it was competent or incompetent. However, apparently the court and the parties accepted this man as being an expert and, therefore, he was properly permitted to give conclusions within the area of his special knowledge.

■ Appellant's complaint that the court committed an error in refusing evidence on the question of insurance coverage came about in this manner: Appellee Mitchell testified that she had been paid the sum of $836.13, the amount under an insurance policy for her medical expenses. She had given credit for this amount in her complaint. Appellant attempted to show by her that altogether there was $1,500 in medical coverage on the car, and therefore he was entitled to credit for the entire amount which might be paid by the insurance company. An objection was sustained to questions about insurance coverage. Mrs. Mitchell was interrogated about this medical coverage under an avowal, taken out of the presence of the jury, but in the presence of the court. This testimony discloses that appellee had made a demand for additional payments under the policy but she had been paid no further sum by the insurance company. Although the testimony is not too clear, there is an indication that she may never get additional payments.

In McGregor v. Mills, Ky., 280 S.W.2d 161, it was indicated that the defendant was properly chargeable with medical expenses if the bills were still unpaid at the time of the trial even though there was a possibility they might be paid by other means.

In the recent case of Greyhound Corporation v. Dowling, Ky., 334 S.W.2d 259, we said:

"If appellants were liable for injuries sustained by Mrs. Connell, they were likewise liable for all medical expenses directly incurred by reason thereof. Who is reimbursed for those expenses is a matter of no concern to appellants as long as only one recovery is allowed. This was recognized in Dunaway v. Darnell, Ky., 323 S.W.2d 857."

The testimony was properly excluded.

Finally appellant insists that the instructions were erroneous. The record does not disclose the complete instructions given by the court. Instructions 1, 6, 7, 8 and 9 are here, together with a fragment of an instruction which we cannot identify by number.

We have held in a number of cases that judgment will not be reversed for improper instructions unless all instructions are included in some part of the record and properly identified by court order. Gibraltar Coal Mining Co. v. McCown, 242 Ky. 281, 46 S.W.2d 96; Louisville Southern R. Co.'s Receivers v. Lewis, 101 Ky. 296, 41 S.W. 3. We therefore are unable to review this question. In spite of the fact that the instructions are not here, we have considered the arguments advanced in appellant's brief in that connection and find them without merit.

Judgment affirmed.