## Pennington's Adm'r v. Pure Milk Co.

June 16, 1939.

Harvey Parker, Jr., Judge.

R. H. Riggs and J. F. Coldiron for appellant.
Hannah, VanSant & McKenzie for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Greenup Circuit Court entered pursuant to a directed verdict in favor of the appellee, Pure Milk Company, the defendant below. Appellant, who was the plaintiff, is the administrator of Elza Pennington, deceased. He brought this action to recover damages for the alleged negligent killing of his decedent, a boy just under thirteen years of age, as the result of a collision between a sled on which decedent was coasting and truck belonging to the appellee. At the close of all the testimony the trial court gave a peremptory instruction to the jury to find a verdict for the defendant. This appeal followed.

U. S. Highway No. 23 runs east and west between Raceland and Russell in Greenup County, over what is referred to in the record as "Raceland Hill." From the crest of the hill the road proceeds eastwardly in a gentle curve for about 1000 feet. There it makes a turn toward the north and then, after running about 500 feet in that direction, swings again to the east toward Russell at approximately the base of the hill. The highway has what is known as a "black-top" surface.

January 23, 1937, was cold and there was some rain and sleet. The 1937 flood in the Ohio River Valley was becoming serious and many parts of Highway No. 23 were already submerged. The surface of the highway on the east slope of Raceland Hill was covered with ice. It attracted a group of at least eight boys, bent on coasting down toward Russell, about 7:30 in the evening. In the group were Elza Pennington and Harold Thompson, both of whom were killed. There were also Kelsie and Orville Bishop and Buster Bowling, who testified at the trial. Kelsie Bishop named three other boys who were there and who went down the hill ahead of decedent. Whether there were any others behind or with them or exactly how many sleds were in the group does not appear. At all events, Kelzie Bishop says that he and his brother started down first and hit a place in the road, "where the ice was melted off and it stopped us and while we were there they passed us up and we got back on the sleigh and we started on as soon as we could, that throwed us thirty or forty yards behind them and we followed them all the way down the hill and I saw the lights of a truck when we got almost to the bottom and it threw the light on the sleigh meeting the truck, the

sleigh was about that time about the center of the road and it started to cut toward the right hand side going east, it seemed like the truck started zigzagging and going toward the left-hand-side going west.''

The driver of appellee's truck testified that he had been to Russell in an effort to secure some milk for distribution in the flood stricken area. He was not successful in getting the milk and was proceeding in a leisurely manner toward the base of Raceland Hill. It is not denied that the truck was on the righthand side of the highway until the driver came into view of the group of coasters as they swung around the last curve of the hill. The driver testified that:

"The first thing I noticed they were all there, one was a little in front and went through on the north side next to the fence and just about that time I saw two more that seemed to be in the middle of the road and I said 'Oh! My God! I can't miss them all' and I applied my brakes and moved to the center of the road to keep from hitting this one on the north and then these others were more in the middle of the road and when the truck went to the middle of the road there wasn't anything left but for these boys in the middle of the road to hit the middle of the truck over to the left.''

Two young men who were riding in the truck with the driver confirmed his account of the accident and there is nothing of substance to the contrary. Both boys on the sled were killed by the impact.

There is no necessity here to consider whether or not the decedent was guilty of contributory negligence as a matter of law. In view of his age and the other attendant circumstances there might be some doubt on this score. See annotations in the American Law Reports to the cases of Shea v. Pillette, 108 Vt. 446, 189 A. 154, 109 A. L. R. 933, and Idell v. Day, 273 Pa. 34, 116 A. 506, 20 A. L. R. 1429. See, also, Reusch v. Licking Rolling Mill Company, 118 Ky. 369, 80 S. W. 1168, 26 Ky. Law Rep. 249.

It is sufficient to state that there is no showing of negligence upon the part of appellee's driver. Even the appellant's own witnesses admit that the driver of the truck was on his right side of the highway until the swarm of sleds swung into view. His acts thereafter

were instinctive, in the face of an emergency not of his making—an emergency at least partially attributable to appellant's decedent. In Commonwealth v. Bowman, 267 Ky. 50, 100 S. W. (2d) 801, 803, we held "that one meeting a sudden danger not of his own creation, although bound to take active measures to save himself from impending harm, is not held by the law to the same degree of judgment and activity that he might be held were the conditions otherwise. A choice of evils or of dangerous courses may be all that is left to a man, and he is not to be blamed if he chooses one and not the other to escape if he is in difficult and perilous circumstances and is compelled to decide hurriedly.''

The rule is equally applicable to the acts of a defendant as to those of a plaintiff. 45 C. J. 712 and authorities cited.

In Tate v. Collins, 266 Ky. 322, 98 S. W. (2d) 938, 939, a collision occurred between a truck of the defendant and a passenger car belonging to the plaintiff. The proof indicated that the two machines were proceeding in opposite directions on their respective right sides of the highway. A child ran out from the side of the highway toward the truck and the driver swerved to avoid running over it and struck the plaintiff's car. In holding that there was no negligence shown we said:

"No one can be held to answer for a happening that results from his doing what the law makes it his duty to do. Courts have directed verdicts for defendants in absence of other negligence in cases where accidents resulted from efforts to avoid striking dogs that suddenly appeared in the pathway of machines. Burhans v. Burhans, 159 Md. 370, 150 A. 795; Olson v. Hermansen, 196 Wis. 614, 220 N. W. 203, 61 A. L. R. 1243. If trying to save a dog will excuse, then certainly one is to be excused for what happens when he is trying to save a child. So we must find other negligence if this verdict is to be sustained."

The fact that the driver of appellee's truck may not have chosen the wisest course in the emergency would make no difference. Consolidated Coach Corporation v. Hopkins' Administrator, 238 Ky. 136, 37 S. W. (2d) 1; Kentucky Traction & Terminal Company v. Roschi's Administrator, 186 Ky. 371, 216 S. W. 579. As

a matter of fact no one could say from the evidence that any other course than that which he pursued would have been wiser in the circumstances. Certainly he was not negligent.

The trial court did not err in taking the case from the jury.

Judgment affirmed.