# Moreland's Adm'r v. Stone.
Dec. 18, 1942.

Marcus C. Redwine for appellant.

Thomas D. Shumate for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellee, while rounding a curve, drove his automobile off the highway, and, as a result, Mrs. Envoid Moreland, eighty-six years of age, who was sitting in a chair nearby, was struck and killed. Whether she was eight or ten feet from the highway, as contended by appellant, or nearer, as stated by appellee, is immaterial, since the only questions presented on this appeal, from a judgment adverse to her administrator in his action to recover damages for her death, are whether appellee was negligent in turning off of the highway, and whether the instruction presenting his defense that he was confronted with an emergency which justified his action, was correct.

The appellee testified, as narrated in the Bill of Exceptions, that

"* * * as he approached the curve in said highway, which curved sharply to the right in the direction he was traveling, and when he was about 40 feet from the apex of the curve, he saw the truck being driven by D. D. Larrison and the truck being driven by Luther Snowden meeting him on the highway traveling side by side on the highway, and that he did not believe he could pass the two trucks on the highway; that said trucks, in his judgment, were making a speed of 30 or 35 miles an hour and that he could not stop his car on the highway in time to avoid colliding head-on with the two trucks above

mentioned, and that he was traveling about 30 miles an hour on a straight section of the highway approaching the above mentioned curve; that he began to apply his brakes and drove his car off of the highway up a side road that intersected the highway on the right-hand side in the direction he was traveling, to his right, and which extended perpendicularly to the highway, and that he drove his car across the side road into the bank which extended along the side road, and the left front wheel gave way and fell over and struck Envoid Moreland, who was sitting about three feet from the black-top surface of the highway against the bank on the side road which extended from the highway; that at all times he had his car under control; and that he began to apply his brakes when he first saw the two trucks meeting him on the highway, being driven side by side. That he was keeping a watchout ahead in the direction he was traveling for cars on the highway, and that he did not see the two trucks traveling side by side meeting him because of the curve in the highway, and that said curve obscured the vision so that one traveling the highway he was traveling could not see vehicles approaching the curve from the opposite direction.

"That he was driving his car on the right-hand side of the highway in the direction he was traveling, on the right-hand side of the center line of the highway in the direction in which he was traveling * * * since he had left Winchester, Kentucky, enroute to Irvine, Kentucky, and that the distance from the point on the highway where the accident occurred to Winchester was approximately 15 miles.

"That the truck being driven by L. E. Snowden when he observed it was attempting to pass the truck being driven by D. D. Larrison on the highway, and that the truck being driven by L. E. Snowden was traveling on the left-hand side of the highway in the direction in which said truck was traveling, and on the left side of the center line of said highway in the direction said truck was traveling, which was on the right-hand side of the center line of said highway in the direction in which the defendant was driving his automobile, and that he ran his car off of the highway onto the side road above

mentioned to avoid a head-on collision with the truck and this was the only means by which, in his judgment, he could have averted a head-on collision between the car he was driving and the truck being driven by L. E. Snowden.''

Appellee further testified, according to the bill, that he did not see Mrs. Moreland until she was struck; that he started out of the highway about 40 feet from where she was sitting; that her body was thrown up about 8 feet when she was struck; that the highway was 16 feet in width; ''that Snowden pulled up to start around Larrison's truck''; that appellee ''cut'' his wheels when he was about 40 feet from the Larrison truck and 20 feet from the Snowden car; that his brakes were in good condition; that at the time he turned off the road, the trucks were side by side; and that Larrison's truck ''was just 20 feet back from the woman.'' If the jury believed this testimony, appellee was entitled to a verdict exonerating him from liability, since one is not held responsible for acts, otherwise negligent, committed instinctively in the face of imminent peril not of his creation. ''A choice of evils or of dangerous courses may be all that is left to a man, and he is not to be blamed if he chooses one and not the other to escape if he is in difficult and perilous circumstances and is compelled to decide hurriedly.'' Commonwealth v. Bowman, 267 Ky. 50, 100 S. W. (2d) 801, 803, quoted with approval in Pennington's Adm'r v. Pure Milk Co., 279 Ky. 235, 130 S. W. (2d) 24, in which other authorities bearing on the subject are collated.

The complained of instruction reads as follows:
''If the jury believe from the evidence that at the time and place of the accident and immediately before the collision occurred resulting in the death of the plaintiff's intestate, Envoid Moreland, the defendant was operating the automobile he was driving on the right side of the highway in the direction in which he was traveling under reasonable control and at a reasonable rate of speed ,and that an emergency, or what appeared to the defendant in the exercise of a reasonable judgment to be an emergency, was created on the highway immediately in front of the defendant by the passing, or attempted passing of an automobile truck being driven by Luther Snowden of an automobile truck, namely R. C. truck, being

driven by Floyd Ballard on said highway, both of said trucks meeting the automobile being driven by the defendant and proceeding in the same direction, and in order to avoid colliding with said trucks, or either of them, the defendant drove the automobile he was operating off the highway, which resulted in the collision aforesaid, the law is for the defendant, and the jury will so find.''

Appellant contends that such an instruction is a novelty in our law and without precedent. On the contrary, it is very similar to the one approved in the case of Louisville Taxicab & Transfer Co. v. Ramey, 222 Ky. 286, 30 S. W. 890. See, also, Stanley's Instructions to Juries, Sections 123, 124. The case of Rabold v. Gonyer, 285 Ky. 618, 148 S. W. (2d) 728, cited by appellant is clearly not in point, since there, the defendant, by his own negligence, created the emergency on which he relied as an excuse. Likewise patently nonapplicable are the strictures on the ''sudden appearance'' doctrine found in the case of Dixon v. Stringer, 277 Ky. 347, 126 S. W. (2d) 448, and relied on by appellant. Nor are we able to find any evidence which would have justified an instruction on ''the last clear chance,'' since there was no evidence of contributory negligence on the decedent's part and no instruction on that subject given. Of course, if the appellee had created the emergency by a negligent act or omission, liability would have attached, from which nothing short of contributory negligence on the part of the deceased could have excused him. In such a case there would have been room for the arguments advanced by appellant. But appellee's testimony, supported by that of other witnesses, showed him to have been blameless for the emergency which necessitated his leaving the road instantly; and clearly, he was entitled to have this defense submitted by an instruction which predicated his exoneration upon the actual existence of the emergency, and upon his own proper driving immediately before it arose. The instruction under consideration met these requirements; and Instruction No. 1, to which no exception was taken, set forth in detail appellee's duties with respect to the operation of his car, and directed a verdict for appellant in the event the jury believed from the evidence that appellee had failed to exercise any one or more of them, and that such failure had caused the fatality. Instruction No. 2 could have been improved by inserting after ''defendant'' in the

fourth to the last line, the words "believing, in the exercise of a reasonable discretion that it was necessary for him to do so in order to avoid serious bodily injuries." However, if the situation was as depicted by appellee and his witnesses, a fact necessary to have been found by the jury as a condition precedent to his exoneration, it is plain that he had no alternative but to pursue the course he did, and the omission which we have indicated was harmless. Assuming, as we must, that Instruction No. 1 correctly defined appellee's duties immediately before the emergency arose, we are unable to find any basis for appellant's claim that Instruction No. 2 was prejudicially erroneous.

It is also argued as a ground for reversal that the verdict was flagrantly contrary to the weight of the evidence, but we cannot agree. Snowden, who made a settlement with appellant and was dismissed from the action, testified that 100 feet or more from the place where the accident happened, he "pulled out a little as if to pass Larrison," but dropped back and at no time was abreast of Larrison, and that neither his car nor Larrison's had reached the point opposite where Mrs. Moreland was sitting when appellee's car struck her, but that he was at least 40 feet back. His testimony was corroborated by Mr. and Mrs. Larrison. But appellee's version of the circumstances causing the accident was corroborated, not only by two occupants of his car, but by an apparently disinterested witness. This witness was driving a truck behind the Larrison car, and, according to the Bill of Exceptions

"* * * as they approached the apex of a sharp curve in the highway a truck being driven by Luther Snowden, traveling in the same direction on said highway he (the witness) was driving, passed the truck he was driving, and the Snowden truck continued on the left-hand side of the road, and just a short distance from the place where the accident occurred, and right at the apex of a curve, the Snowden truck attempted to pass the truck being driven by D. D. Larrison, and about the time he (the witness) saw the Stone car coming and he knew something was going to happen, and he turned his head away from the scene of the accident immediately before it occurred."

On the whole, the evidence creates the impression

that Snowden was the real culprit. In any event, it is obvious that the verdict was supported by sufficient evidence.

The motion for a new trial was overruled, and an appeal granted by the Circuit Court on December 13, 1940, but the record was not lodged in this Court until November 24, 1941. The motion to set aside the order overruling the motion for a new trial did not operate to extend the time limited by law, Section 738, Civil Code of Practice, for the filing of the record; and hence, it was filed out of time. But, as we have frequently written, where the two year maximum limitation has not been exceeded the objection must be raised by a motion to strike before submission in order to be available to the appellee.

Judgment affirmed.