321 F.2d 279
 Boyd F. TAYLOR, Ancillary Administrator of the Estate of Sherman E. Wires, Deceased, Plaintiff-Appellant,
v.
Rosalind CIRINO, Defendant-Appellee.
Robert FLICK and Billy Franks, Plaintiffs-Appellants,
v.
Rosalind CIRINO, Defendant-Appellee.
 No. 15065.
 No. 15066.
 United States Court of Appeals Sixth Circuit.
 August 13, 1963.
 
 Robert L. Milby, London, Ky., for appellants, Hamm, Taylor & Milby, London, Ky., William P. O'Neil, William E. Cooper, Wallace F. Burroughs, Knoxville, Tenn., on the brief.
 Herbert Sledd, Lexington, Ky., for appellee, Glenn H. Stephens, Williamsburg, Ky., Brown, Sledd & McCann, Lexington, Ky., on the brief.
 Before CECIL, Chief Judge, WEICK, Circuit Judge, and McALLISTER, Senior Circuit Judge.
 WEICK, Circuit Judge.
 
 
 1
 These two appeals are from orders of the District Court granting defendant's motions to dismiss made at the close of plaintiffs' evidence under Rule 41(b) of the Federal Rules of Civil Procedure.
 
 
 2
 The suits in the District Court were to recover damages for wrongful death, personal injuries, and to property arising out of a head-on collision between a tractor-trailer and an automobile proceeding in opposite direction on U. S. Highway No. 25-W in Whitley County, Kentucky. The cases were consolidated for trial and appeal.
 
 
 3
 The tractor-trailer was owned by plaintiff Billy Franks and operated by plaintiff Robert Flick. Franks sued for damages to the tractor-trailer and Flicks for personal injuries. Wires, a passenger in the tractor-trailer, was killed and his personal representative sued for wrongful death. The defendant, Rosalind Cirino owned and operated the automobile which was a Valiant compact model.
 
 
 4
 The road at the scene of the accident was straight, level and ran generally in a north-south direction. It was paved with concrete to a width of 20 feet and was divided by a painted line into two driving lanes. The shoulder on the west side of the road was from 6 to 8 feet in width. There was a drop-off from the concrete road to the shoulder of about 3 inches in one place which decreased to about 1½ inches.
 
 
 5
 The tractor-trailer was proceeding north and the defendant's automobile south in broad daylight in heavy traffic in open country. As the vehicles approached the scene of the accident an unidentified automobile going north passed the tractor-trailer on the left and in so doing occupied the southbound lane until the passing was completed. The defendant turned her automobile to the right to avoid a collision with the unidentified car and the right front and rear wheels of her automobile went off the payment onto the west shoulder of the road, occupying not more than 10 inches of the shoulder. She proceeded 50 feet on the shoulder when her automobile turned sharply to the left, onto the pavement, and out of control. It swerved diagonally across the south lane about 20 feet and collided head on with the tractor-trailer in the north lane two feet from the center line of the road. This was the right side of the road for the tractor-trailer and wrong side of the road for the automobile.
 
 
 6
 The driver of the tractor-trailer applied his brakes and turned to the right when the unidentified auto was passing him. The wheels locked and the outfit jackknifed and upset at the time of the collision.
 
 
 7
 The speed of the tractor-trailer was 50 to 52 miles per hour. There was no evidence as to the speed of defendant's car. The speed limit was 60 miles per hour.
 
 
 8
 At the point where the wheels of the defendant's automobile went on the shoulder of the road the drop was about 3 inches. The drop was about 1½ inches where she returned to the pavement.
 
 
 9
 The cases were tried before a jury. In granting the motions to dismiss, the District Judge ruled as a matter of law that "defendant was confronted with an emergency of such a nature as to relieve her of liability and upon the further ground that plaintiff Robert Flick testified, in substance, that he was unable to say whether his injuries and the wrecking of the tractor-trailer were due to a collision with the vehicle of the defendant or were due to the jackknifing of his tractor-trailer by his operation of it."
 
 
 10
 A motion to dismiss under Rule 41(b) is considered the equivalent of a motion for directed verdict under Rule 50. In considering such a motion the District Judge was required to view the evidence, as well as the inferences properly deducible therefrom, in the most favorable light to plaintiffs and he should have denied the motion if there was any substantial evidence of negligence. Cranston Print Works Co. v. Public Service Co., 291 F.2d 638 (C.A. 4); Saporito v. Holland-America Lines, 284 F.2d 761 (C.A.3); McDowell v. Bratcher, 265 F.2d 261 (C.A.6); Hinton v. Dixie Ohio Express Co., 188 F.2d 121 (C.A.6). In the federal courts, issues of fact must be determined by the jury and not by the court. Byrd v. Blue Ridge Rural Electric Corp., Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953.
 
 
 11
 The unidentified auto did not touch either the tractor-trailer or defendant's automobile and did not stop. It must have returned to the north lane of the road before defendant went off the pavement as there was not sufficient room in the south lane for the two automobiles to pass.
 
 
 12
 No collision occurred when the two right wheels of defendant's automobile left the pavement. It occurred only when her automobile returned to the pavement, got out of control, and swerved over to the wrong side of the road. If she had continued straight ahead for just a short distance the accident would not have happened.
 
 
 13
 The defendant did not testify and the record therefore contains no explanation from her.
 
 
 14
 We think the facts, as testified to by plaintiffs' witnesses, established the existence of an emergency which confronted both the driver of the tractor-trailer and the defendant. The existence of the emergency, however, did not relieve either from the duty of exercising ordinary care. In order to avoid liability, their conduct in the emergency must measure up to the standard of ordinary care in the circumstances confronting them. Edmiston v. Robinson, 293 Ky. 273, 277, 168 S.W.2d 740. Whether such care had been exercised is ordinarily a question of fact for the jury to determine.
 
 
 15
 In Gross v. Barrett, 350 S.W.2d 457 (Ky.) the Court of Appeals of Kentucky held that it was prima facie evidence of negligence for a person to be on the wrong side of the road at the time of a collision and that he had the burden of proving that his presence on the wrong side was not due to his negligence. To the same effect see Myers v. Walker, 322 S.W.2d 109 (Ky.).
 
 
 16
 In Shepherd v. Marcum, 334 S.W.2d 903 (Ky.) the defendant, while operating a truck ran into a building owned by plaintiff and located near the road. He claimed that he was forced off the road by an unidentified truck crossing the center line of the highway in going around a curve. The court said 334 S.W. 2d at page 904:
 
 
 17
 "Even if the appellant had been confronted with an emergency, the reasonableness of his conduct in driving off the highway would have been a question for the jury."
 
 
 18
 In Vernon v. Gentry, 334 S.W.2d 266, 268 (Ky.), the court said:
 
 
 19
 "The defendant attempted to excuse the happening of the accident by showing she was forced off the highway by an approaching automobile. It was the proper function of the jury to determine whether defendant satisfactorily rebutted the presumption raised by the happening of the accident."
 
 
 20
 In Bourland v. Mitchell, 335 S.W.2d 567 (Ky.) the defendant sought to excuse his being on the wrong side of the road because the car ahead of him stopped suddenly and it was necessary to swerve to the left side of the road to avoid a collision. In discussing Vernon v. Gentry and Shepherd v. Marcum the court 335 S.W.2d said at 570:
 
 
 21
 "In the recent cases of Vernon v. Gentry, Ky., 334 S.W.2d 266, and Shepherd v. Marcum, Ky., 334 S.W. 2d 903, each driver explained that the accident was caused by the fact that he was forced off the road by another car, and this evidence was undisputed. The opinions, in effect, held that such explanations are not conclusively binding upon the court or jury. We recognize that both cases involved the doctrine of res ipsa loquitur, but in each case the offending party gave an undenied explanation of how the accident occurred which, if true, would have absolved him from liability. But in each instance the court held that, nevertheless, the case should be submitted to the jury, the inference being that neither the court nor the jury was forced to believe the witness."
 
 
 22
 Other cases where the issue of emergency was submitted to the jury are Temperly v. Sarrington's Admr., 293 S.W.2d 863 (Ky.); Moreland's Admr. v. Stone, 292 Ky. 521, 166 S.W.2d 998.
 
 
 23
 Defendant relies on Kentucky decisions holding that the defense of emergency was established as a matter of law. In Agee v. Hammons, 335 S.W.2d 732 (Ky.) defendant swerved to his left to avoid a collision with a car backing out of a driveway into the street and defendant collided head on with plaintiff's car on defendant's left side of the road. The court held that the defendant was relieved of liability as a matter of law.
 
 
 24
 In Pennington's Admr. v. Pure Milk Co., 279 Ky. 235, 130 S.W.2d 24, a truck driver, going up a hill on his right side of the road which was covered with snow and ice, swerved to the left to avoid running into some children who were coming down the hill on sleds. The court directed a verdict for defendant which was affirmed on appeal.
 
 
 25
 The fact that it may not actually have been necessary for defendant to have driven on the shoulder of the road does not establish her negligence if defendant, confronted with an emergency, had good reason to believe that it was. But whether she acted reasonably under the circumstances in driving off the pavement and attempting immediately to return was, in our opinion, for the jury and not the court to determine. Shepherd v. Marcum, supra.
 
 
 26
 This is not as clear a case of no liability as Agee and Pure Milk where the court determined the issue as a matter of law.
 
 
 27
 We have some difficulty in reconciling decisions involving the emergency doctrine where the issue of negligence was required to be submitted to the jury from those where the court determined non-liability as a matter of law.
 
 
 28
 In the present cases we think that whether defendant exercised ordinary care in the emergency was a disputed issue of fact which should have been submitted to the jury. Gross v. Barrett, supra.
 
 
 29
 In our judgment, it was error for the District Court to rule as a matter of law that the case should be dismissed for failure to prove whether the cause of the jackknifing of the tractor-trailer was the application of its brakes or the collision with defendant's automobile.
 
 
 30
 Defendant did not claim that the driver of the tractor-trailer was negligent. When the unidentified auto pulled along side of the tractor-trailer the driver was confronted with the same emergency as was the defendant. He applied his brakes and turned to the right. The tractor-trailer did not then jackknife. When defendant's automobile was swerving across the street the driver applied more force to the brakes which locked the wheels. The jackknifing of the outfit took place at the moment of impact. It seems to us immaterial whether the collision caused the tractor-trailer to upset or whether it was caused by the application of its brakes in an effort to avoid a collision with defendant's automobile coming on the wrong side of the road. Causation would appear to exist in either case. At least, the issue of proximate cause should have been submitted to the jury.
 
 
 31
 For error in granting defendant's motions to dismiss, the judgment in each case is reversed.