Beulah **MOORE**, Appellant,

v.

Mabel **WHEELER** et al., Appellees.

Court of Appeals of Kentucky.

March 1, 1968.

J. K. Wells, Eugene C. Rice, Paintsville, Vincent & Rice, Ashland, for appellant.

H. R. Wilhoit, Wilhoit & Wilhoit, Grayson; J. W. McKenzie, Ashland; and G. C. Perry, III, Paintsville, for appellees.

MILLIKEN, Judge.

On March 12, 1965, shortly after 1:00 p. m., E.S.T., three sisters, Beulah Moore, Mabel Wheeler and Jewell Yates were traveling north in Beulah Moore's car on U.S. Highway 23 in Boyd County, Kentucky. U.S. 23 is a twenty-four-foot wide, blacktopped, straight highway at the point of the accident and has a ten-foot wide gravel berm on each side of the highway. Appellant Moore was driving, Mabel Wheeler was in the middle of the front seat, and Jewell Yates sat by the front right door of the Moore 1960 Chevrolet station wagon. The weather was clear, the road dry and its surface good. The ladies were heading for Catlettsburg, Kentucky, but at a point approximately ten miles south of that city, on a fairly straight stretch of Highway 23, Beulah Moore, while attempting to pass a

trailer truck driven by Charles Crockett, lost control of the car which caused it to leave the road, cross a drainage ditch, strike an embankment and turn over twice. The accident killed Jewell Yates, who was thrown out of the car, and badly injured Beulah Moore and Mabel Wheeler.

This litigation followed with: Beulah Moore suing Charles Crockett (the driver of the tractor trailer), F. R. Crockett (the father of Charles Crockett and the owner of the tractor), and Foremost Dairies of the South, Inc. (owner of the trailer); Howard Yates, administrator for Jewell Yates, suing Beulah Moore, the Crocketts and Foremost; and Mabel Wheeler suing Beulah Moore, the Crocketts and Foremost. All these actions, being related, were joined for trial. The judge directed a verdict for Foremost Dairies; the jury absolved the Crocketts and found against Beulah Moore in favor of Mabel Wheeler for $10,000.00, and in favor of Howard Yates, administrator, for $3,075.00. Beulah Moore appealed the judgments against her and the administrator of Jewell Yates cross-appealed.

Beulah Moore's version of the case was that she was forced off the road by the Crockett truck when she attempted to pass it. Her argument in this action was that she should not be held responsible for her acts, even though they might be negligent ones, because they were committed instinctively when she was faced with a "sudden emergency", created by the actions of the Crockett truck. The authority for this theory is Moreland's Administrator v. Stone, 292 Ky. 521, 166 S.W.2d 998 (1942).

Unfortunately for appellant Moore, the testimony given during the trial did not bear out her contention that the emergency was not of her making. The testimony of Crockett and Mrs. Wheeler justified an inference that appellant Moore could have averted the crash by dropping back into her lane behind the truck. Trooper James Boyle of the Kentucky State Police testified that Mrs. Moore was undoubtedly going at a high rate of speed when she left the road

and Charles Crockett denied, as did his co-driver Childers, that the truck ever swerved into the left hand lane at any time during the sequence of events leading up to and including the accident. The jury weighed the testimony and the evidence and chose to believe Charles Crockett.

■ The appeal of Beulah Moore is based on several grounds. The first of these is that Nora Gee Thompson was a witness that appellant Moore wanted for the trial but could not find. This witness' purported testimony was summarized in an affidavit and it purportedly implied that the Crockett truck was at fault in the accident. Appellant Moore sought to read the affidavit into the record or have the case continued until Nora Gee Thompson could be found. The court refused both requests and Beulah Moore argues that under CR 43.03 the court had to either continue the case or allow the affidavit to be read. She cites no authority for this position and Clay's Kentucky Practice, Vol. 7, mentions nothing to support this argument. The trial court offered its assistance in getting the witness to the trial but appellant Moore acted no further on the matter even though there was enough time to do so. We conclude that the trial court properly excluded the affidavit, for if it portrayed the testimony Nora Gee Thompson would give it was immaterial. The witness was a waitress who had seen Crockett and Childers in a restaurant shortly after the accident. The affidavit stated that she heard them talking and "they said the (Moore) station wagon was behind them * * * and wrecked; that they appeared to be worried and upset and they went on without stopping after the accident." The fact is that Crockett did stop after the accident and attempted to give aid to the injured women.

Trooper Boyle's testimony on the speed of the Moore car at the scene of the accident was also objected to by counsel for appellant. Eldridge v. Pike, Ky., 396 S.W.2d 314 (1965) is relied on as authority for the proposition that just being a member of the

Kentucky State Police does not qualify one to give opinion evidence as an expert. Appellant is correct as to the Eldridge holding, but here the record shows that Trooper Boyle had been a member of the force for six years, had investigated more than 450 accidents, and had received special schooling on the various techniques and procedures involved in investigating traffic accidents. He presented credentials beyond just being a member of the force which distinguishes this situation from Eldridge v. Pike. Also Boyle was on the scene immediately after the accident occurred which distinguishes our facts from those in appellant's case of Redding v. Independent Contracting Co., Ky., 333 S.W.2d 269 (1960), where the officers arrived more than thirty minutes after the accident. Boyle's experience with traffic accidents also distinguishes this case from Redding.

■ The trooper estimated the speed of the Moore station wagon at the scene of the accident as being between seventy and eighty miles per hour but admitted that this was a rough estimate. As mentioned above, Beulah Moore objected to Boyle's testimony about the speed of the car on grounds that he was not an expert, but in Kentucky Power Company v. Kilbourn, Ky., 307 S.W. 2d 9 (1957) we said: "The decision as to qualification of the witness as an expert rests in the discretion of the trial court." We think Officer Boyle was well qualified to give a knowledgeable opinion of what occurred and whether speed caused the occurrence. In Eldridge the officer gave an opinion about which car entered upon a bridge first and there was no supporting data to justify an opinion on that issue. In the case at bar there were lengthy skid marks on the highway and on the berm as well as the position and damage to the station wagon which certainly would qualify as a basis for the trooper's opinion about the speed of the station wagon at the time. In summary, Boyle had been systematically trained for the very work he did here; he was far better qualified in his field than a novice. Wigmore, Evidence, Sec. 556.

The particular experiential qualifications of a witness are invariably determined by the trial judge, and his decision ordinarily will not be disturbed on appeal. Wigmore, Evidence, Sec. 561.

■ Another issue presented by Beulah Moore for review concerns the court's decision in denying her motion for a directed verdict at the close of her testimony. The evidence shows that no living person saw the accident except Beulah Moore, Mabel Wheeler, Charles Crockett and Tom Childers. Their testimony did not agree on the cause of the accident. Beulah Moore claimed the truck swerved into her lane, forcing her off the road. Mabel Wheeler testified that the truck swerved over but implied that Mrs. Moore could have avoided the difficulty by slowing up. Charles Crockett strongly denied swerving into the left lane forcing Mrs. Moore off the road. He stated that the Moore car approached him from the rear at a fast rate of speed and then veered off into the embankment; he advanced no theory as to what could have caused the accident. The testimony of Trooper Boyle concerning the speed of the Moore vehicle was further evidence which deserved consideration by the jury. In short, this was a proper matter for the jury to decide.

■ Counsel for Beulah Moore offered an instruction on "sudden emergency". The court refused to give it and she contends that this deprived the jury of any opportunity to make a decision on her theory of the case. In Clay, Kentucky Practice, Vol. 7, p. 90, comment 2 to CR 51, it is pointed out that the trial court must instruct so as to provide reasonable guidance to the jury, but it is "apparently not bound to instruct on every possible phase of the case." Mrs. Moore admittedly had a clear, straight road ahead, had followed the truck for some distance, had seen other cars pass it without trouble before she attempted to pass it, and had she "eased" out from behind the truck as she claimed she did she would not have left her skid marks diagonally across the

highway. Whatever emergency Mrs. Moore encountered was contributed to by herself and was not the kind which would have entitled her to such an instruction. See Stanley's Instructions, Sections 123 and 592. Furthermore, instruction "2D" stated the truck's duty to stay on its side of the road and not to change its course without proper signals.

■ Appellant Moore also claims the court erred in refusing to give her instruction designated BCM No. 3. However, instruction No. 2 given by the court achieved the same purpose by setting forth the duties required of Charles Crockett, the driver of the truck, and asking a decision on whether they were complied with.

■ Another point brought up by appellant Moore concerns Mabel Wheeler's award for future loss of wages for which she did not specifically state a claim in her complaint. It is argued that the complaint did not allege a claim for any loss of wages beyond one year and that the court's instruction No. 10 erroneously permitted such additional recovery. The Wheeler complaint did allege that her ability to earn money in the future was permanently impaired; and in the last paragraph she demanded judgment in the sum of:

" * * * $3,500.00, loss of wages; and $45,000.00 for present and future pain and suffering, permanent injuries and permanent impairment of ability to earn money; for a jury trial; for costs; and for any and all other relief to which she may appear entitled."

Beulah Moore also objects to the jury's award of $7,259.77 for loss of future wages. She argues that this figure is excessive and not warranted by the proof presented. Mabel Wheeler was examined by two doctors, Donahoe and Holbrook, and their conclusions conflicted. She then placed herself under the care of Dr. Holbrook who performed a more extensive examination than Dr. Donahoe, complete with x-rays and tests, and he found compression frac-

tures of the fifth and sixth thoracic vertebrae plus a chronic arthritic condition in the back. Dr. Holbrook attended Mrs. Wheeler until her fractures healed. He believed she could expect complete recovery if she followed his advice. This physician testified that she would experience some discomfort from time to time because of the arthritis in the back, but that the arthritic condition had not been caused by the accident. Mrs. Wheeler had been a $30.00 a week waitress before the accident and the doctor felt that with adherence to a program of exercises, which were designed to strengthen her back, she could resume that line of work in the near future. According to Mrs. Wheeler her work was rather hard—much harder than that expected of the average waitress.

■ Counsel for Beulah Moore asserts that the testimony elicited by the Crockett's counsel, which deals with why sister sued sister, was really an attempt to inform the jury that Beulah Moore had liability insurance. The sisters were pictured by counsel for Crocketts as being money hungry. In his closing argument counsel for the Crocketts said:

" * * * you know, if I were sitting on (this) jury, I wouldn't hesitate to burn them up, I would write a big verdict against Beulah Moore alone just to teach them a lesson * * * they know what they are doing * * *."

No objection was made to this portion of the argument according to the supplemental record. In any event, we do not consider it prejudicial for it was merely counsel's way of suggesting the possibility of collusion between the sisters in an effort to establish liability on the part of his clients, the Crocketts.

■ The total award to Mrs. Wheeler was $10,000.00 which included $1,200.00 for loss of earnings to the date of the judgment, $540.23 for medical expenses, $1,000.00 for pain and suffering and $7,259.77 for loss of future wages. The last item obviously was reached by adding enough to

the other three items to reach a total of $10,000.00. Mrs. Wheeler was 51 years of age at the time of the accident and had been a widow for fourteen years. She earned about $30.00 a week working as a waitress six days a week and would have had a life expectancy of about 25 years at the time she testified. The award for loss of future earnings approximated four and a half years' wages at $30.00 a week. While this amount may appear generous in the light of her physician's opinion that she ultimately would make full recovery from her injuries, we do not believe it is so excessive as to show passion and prejudice on the part of the jury in awarding her that much. In Dinsmore v. Baird, Ky., 325 S.W.2d 308 (1959) we reversed an award of $10.000.00 solely for pain and suffering caused by two fractured ribs, a fracture of the first sternal segment and a bruised knee on the ground that the verdict struck us "at first blush as excessive", but this case affords no suitable criterion for concluding that the present award of $7,259.77 for loss of future earnings was excessive.

 The next point on appeal is raised by appellee Howard Yates, administrator of the estate of Jewell Yates. He cross-appealed on the ground that the damages of $3,075.00 awarded to him for her death were inadequate. Of the total award, $1,075.00 was for the funeral, leaving $2,000.00 for the two children of the widowed Jewell Yates. The administrator asserted that this award is the result of passion and prejudice on the part of the jury. Given the financial condition of Jewell Yates whose monthly earned income was no more than $50.00, earned as a baby sitter, the award by the jury amounted to full pay for about forty months at the rate of $50.00 a month. At her age of 62, she had a life expectancy of approximately fourteen years and a working expectancy of less time than that. We cannot conclude that the award was patently inadequate.

The trial judge did not abuse his discretion in telling the jury to make a sincere effort to reach a verdict in the cases; he in no way told them what verdicts to bring in. We conclude that a fair trial was had by all the parties.

The judgments are affirmed on the direct appeal and on the cross-appeal.

All concur.