Bulah LEE, as Administratrix of the
Estate of Hobart Wayne Stamper,
Deceased, Appellant,

v.

Denny L. BUTLER, an unmarried infant
under 18 years of age; Fannie Watkins
and Nelson Watkins, Appellees.

Isle MAYER, as Administratrix of the
Estate of Marion V. Moore,
Deceased, Appellant,

v.

Denny L. BUTLER, an unmarried infant
under 18 years of age; Fannie Watkins
and Nelson Watkins, Appellees.

Court of Appeals of Kentucky.

Dec. 21, 1979.

William C. Wessell, Errol L. Cooper, Jr.,
Lexington, for appellants.

Oscar H. Geralds, Jr., Geralds, Cassidy &
Moloney, Lexington, for appellees.

Before HAYES, C. J., and LESTER and
VANCE, JJ.

LESTER, Judge.

This action arose out of a single car accident in which two passengers were killed. The jury found the decedents to be contributorily negligent and from a judgment dismissing the complaints, as consolidated, this appeal is taken.

On July 2, 1977, between the hours of 7:00 and 8:00 P.M., Denny Butler, who was driving Nelson Watkins' car, and his girlfriend, Shirley Hill, left a Long John Silver's Restaurant and went to the Ashland Parking Lot near Wayne Stamper's home in Lexington. Stamper had some marijuana. From this point, Butler, Hill and the two decedents travelled to Charlie Patrick's house and while enroute, they purchased some beer. Upon arrival, the group (with the exception of Hill) drank beer, smoked cannabis and listened to music. Sometime later Steve Patrick joined the party and they all got into a car to acquire more beer. Thereupon, they returned to the house and resumed their activities. At some undisclosed time subsequent to 11:00 P.M., all the parties got into the vehicle Butler was driving for the purpose of taking the decedents home and on Cleveland Road the accident occurred which resulted in this litigation. There was evidence to the effect that Butler, Stamper and Moore had drunk beer and smoked marijuana on previous occasions. Fannie Watkins, mother of Butler, was a party to the action because she had signed her son's application for a driver's license pursuant to statute.

Appellants' first assignment of error revolves around the testimony of Dr. Irene Rokle, a pathologist, who has been engaged as such since 1957. The specific complaint is that the medical expert, after testifying as to the effects of varying levels of alcohol on the human body, was permitted to express her opinion as to the reaction that marijuana had when mixed with alcohol upon the defendant driver. Appellants claim the doctor was not qualified to give evidence concerning the drug because she had conducted no experiments in the particular subject, nor had she had any special training in the field. On the other hand,

Dr. Rokle had read literature and current studies on the effects of cannabis with particular emphasis upon the medicinal use thereof. Moreover, she was "very familiar with Dr. Crosby" who had written on the subject in the American Journal of Medicine and she was knowledgeable of the specific tests involved in determining the effects of marijuana. The trial court overruled the objections to the pathologist's evidence.

The long standing principle that it is within the discretion of the circuit judge to decide as to the qualification of witnesses has been re–emphasized most recently in *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380, 385 (1977), and his ruling ordinarily will not be disturbed on appeal. *Moore v. Wheeler*, Ky., 425 S.W.2d 541, 544 (1968). In *Kentucky Power Company v. Kilbourn*, Ky., 307 S.W.2d 9 (1957), the view was expressed:

While it is clear that a witness in order to be competent as an expert must show himself to be skilled in the business or profession to which the subject about which he is called to testify relates, there is no precise rule as to the mode in which such skill or experience must be acquired. A witness may become qualified by practice or an acquaintance with the subject. He may possess the requisite skill by reason of actual experience or long observation. *Id.* at 12.

Thus, we note that no precise standard has been adopted for qualification as an expert, but such standing can be acquired by acquaintance with, or observation of, the subject matter. At the time of trial, Dr. Rokle had been a pathologist for some twenty–two years and was more than conversant with her subject matter through her various readings of work of experts in the field.

In 3 Wigmore, *Evidence* § 687 (Chadbourn Rev.1970), treating a physician's knowledge based upon the study of literature upon a given subject and objections based upon evidence adduced therefrom, we find the following:

To deny the competency of a physician who does not know his facts from person-

al observation alone is to reject medical testimony almost in its entirety. To allow any physician to testify who claims to know solely by personal experience is to appropriate the witness stand to imposters. Medical science is a mass of transmitted and collected data from numerous quarters; the generalizations which are the result of one man's personal observation exclusively are the least acceptable of all. The law must recognize the methods of medical science. It cannot stultify itself by establishing, for judicial inquiries, a rule never considered necessary by the medical profession itself. It is enough for a physician, testifying to a medical fact, that he is by training and occupation a physician; whether his source of information for that particular fact is in part or entirely the hearsay of his fellow–practitioners and investigators is immaterial.

We believe the above quoted text to be the more logical view. We further observe that an expert witness is subject to cross–examination and this is "the primary means by which trial counsel can attempt to persuade [the] jurors of the weight or significance to be attached to the testimony." *Edwards, supra.*

■ Appellants next contend that it was error to admit testimony from the defendant driver that he and the decedents had on prior occasions consumed alcohol and smoked cannabis simultaneously. Before the introduction of the evidence, counsel for the litigants, out of the hearing of the jury, argued the admissibility, with the defendant basing his request to adduce the testimony upon the plea of contributory negligence for the purpose of showing that appellants' decedents had knowledge of the use of the marijuana and its effects. In overruling the objection, the court stated:

It appears to the Court that one of the elements in the instructions, if they are given in this case, will be on contributory negligence .... will be whether or not the decedents knew the defendant had been drinking and smoking marijuana and whether or not his ability to operate

a motor vehicle was impaired as a result thereof. I think it is competent. If the proof is that he knows that they had used pot before that gives the basis for those people knowing what effect it might have on someone who used it.

We agree with the circuit judge. We are aware that prior incidents or acts similar to the one involved in this litigation are inadmissible, subject to certain exceptions. *Moore v. Bothe*, Ky., 479 S.W.2d 634 (1972). However, the general principle proscribes evidence of habit, custom or propensity for carefulness or carelessness on a particular prior occasion. On the other hand, where a similar act is sought to be introduced to show knowledge or notice of a potentially hazardous situation, then the testimony is proper. *Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973); *Louisville & N.R. Co. v. Jackson's Adm'r*, 250 Ky. 92, 61 S.W.2d 1104 (1933). There is no effort to demonstrate that appellee had other accidents at previous times while under the influence of drugs and other intoxicants, but merely to show that all parties concerned were aware of its use by the dead passengers as well as the defendant below. At 2 Wigmore, *Evidence* § 301 (3rd Ed.) under the theory of evidencing knowledge the view is expressed:

In restoring to former offenses or other similar acts to show Knowledge, it is sufficient to invoke the general methods of proving Knowledge....

and

Such, then, is the strict and legitimate scope of evidence of other similar acts to show Knowledge. The process of thought is: The other act will probably have resulted in some sort of warning or knowledge; this warning or knowledge must probably have led to the knowledge in question.

■ The third contention upon appeal is that the trial court erroneously permitted appellee to continuously ask leading questions upon cross–examination when the witness, Steve Patrick, "was clearly sympathetic, friendly and not truly 'adverse' to

appellee." We note that the witness was called by appellants, and in response to their questions upon *direct* examination, Patrick related that he was in the past and at that present time a friend of appellee's having known him for about a year. This was the evidence employed to sustain the friendship and sympathetic attitude of the witness which, it is argued, should have the effect of precluding leading questions upon cross–examination. Appellants speak of a number of leading questions but objected to only one and we are, therefore, limited to that single instance as the others have not been preserved for review. CR 46. Turning to the transcript, we find that the question was objected to and the court overruled the objection, but the inquiry was never answered by the witness. For that matter, counsel for appellee commenced questioning on another matter. We are unable to see any prejudice to appellants' case, and little or no ground for reversal in conjunction with this issue.

Lastly, the appellants argue for reversal because the appellee–defendant affirmatively answered the following question:

> In your opinion, would you tell the jury whether or not the fact that you drank alcohol and smoked marijuana had substantial bearing on this accident?

It is their position that the witness should not have been allowed to express an opinion upon the issue which the jury would have to ultimately decide. The general rule supports the argument, but as with most rules, there are certain exceptions and this situation falls within that category generally referred to as the Collective Facts Rule which is discussed in Lawson, *Kentucky Evidence Law Handbook* § 6.00, II C and more succinctly put in *Hartman v. Dyer*, 298 Ky. 173, 182 S.W.2d 646, 648 (1944), to the effect:

> But, where the witness gives the facts upon which he bases his opinion, the verdict will not be set aside because, in addition to reasons for drawing his conclusion, the witness expresses the conclusion itself; especially where the conclusion is not entirely superfluous. (Citations omit-

ted). Since all jurors are not skilled in the operation of an automobile, the conclusion in this instance was not superfluous.

In the present case, the entire colloquy pertinent to the issue was:

Q 69 That evening before you started on that trip in your car when this accident happened, had the beer and the marijuana begun to effect you?

A. Yes sir, we drank quite a bit and smoked quite a bit.

Q 70 Well, would you explain how it affected you?

A. It just makes you slow .... you think a lot slower.

Q 71 In your opinion, would you tell the jury whether or not the fact that you drank alcohol and smoked marijuana had a substantial bearing on this accident?

A. Yes sir, it did.

*MR. COOPER*: Objection.

*THE COURT*: Overruled.

The defendant, not some other witness, said that he drank and smoked extensively, that the effect was to slow the mental process and that it produced a substantial bearing upon the accident. It should be observed that Butler was not asked if his actions caused the accident, but whether they had a bearing thereon, or, put another way, contributed to it. We should also note that all jurors are not familiar with the effects of a mixture of alcohol and cannabis, so we do not consider the evidence superfluous. Even if the question were improper, it would not form a basis for reversal which was the same conclusion reached in *Hartman, supra.*

The judgment is affirmed.

All concur.