66 F.3d 326
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George A. PHELPS and Watts & Durr Oil Company, Inc.,
Plaintiffs-Appellants,
and
Federated Insurance Company, Intervening Plaintiff-Appellant,
v.
BELGER CARTAGE SERVICE, INC., and Robert C. McCulloch,
Defendants/Third Party Plaintiffs-Appellees.
 No. 94-5545.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1995.
 
 Before: NELSON and DAUGHTREY, Circuit Judges, and JARVIS, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a motor vehicle negligence case that was removed from a Kentucky court to federal court on diversity grounds. Following a two-day bench trial, Magistrate Judge James F. Cook entered an opinion and order finding that the defendants were not at fault for the accident; that the plaintiffs were 20 percent at fault; and that an agency of the Commonwealth of Kentucky was 80 percent at fault. Judgment was entered for the defendants, and the plaintiffs have appealed.
 
 
 2
 The plaintiffs interpret the decision of the magistrate judge as determining, in effect, that the Commonwealth's issuance to the corporate defendant of a permit for transporting an oversized/overweight load somehow immunized the defendants from liability for negligence. As we read the decision, however, the magistrate judge merely determined that the defendants exercised due care, under the circumstances, while the plaintiffs and the Commonwealth did not. Concluding that these findings are not clearly erroneous, we shall affirm the judgment.
 
 
 3
 * Defendant Belger Cartage Service, Inc., a specialist in the movement of oversized loads, undertook to transport a large Pepsi Cola bottle washer from northeastern Tennessee to Arkansas by way of Kentucky. The dimensions and weight of the load went beyond the limits prescribed by Sec. 221 of Chapter 189 of the Kentucky Revised Statutes, so Belger applied to the Motor Carrier Division of the Kentucky Transportation Cabinet for a special permit authorizing the company to exceed the limits. By statute, the operation of a motor vehicle in accordance with the terms of such a permit does not constitute a violation of Chapter 189. See K.R.S. 189.270.
 
 
 4
 Belger's application for a permit was handled by Louise Drury, a supervisor in the Overdimensional Permit Section of the Motor Carriers Division. Ms. Drury issued the permit on October 16, 1990, specifying a route designed to avoid a construction area on Interstate 75. Belger's driver was routed to Kentucky Highway 192 over a road paralleling the interstate, and Ms. Drury envisioned that the driver would take Highway 192 west for a short distance and then return to the interstate. She intended to send him north on I-75 for three miles or so, and then have him pick up Highway 80 and follow it west toward Arkansas.
 
 
 5
 In entering the prescribed route on the permit, Ms. Drury inadvertently omitted the three-mile segment of I-75. "It was just an error on my part," Ms. Drury testified. As issued, the permit instructed the driver simply to take Highway 192 to Highway 80. It is feasible to reach Highway 80 by going west on Highway 192, but it takes longer to do so that way than by the route Ms. Drury had in mind.
 
 
 6
 The driver of the Belger truck, defendant Robert McCulloch--a highly experienced "heavy hauler" with an excellent safety record--received a copy of the permit before entering Kentucky on October 18, 1990. As the permit required, he was accompanied by two escort vehicles; one drove in front of him and the other brought up the rear. His own truck had two revolving beacon lights atop of the cab and was decked out with stick flags in accordance with state regulations.
 
 
 7
 Any deviation from the routing prescribed in the permit was prohibited, and Mr. McCulloch and his escorts attempted to follow the specified routing faithfully. The permit did not indicate directions of travel, however, and when Mr. McCulloch reached Highway 192 he assumed that he should head west on it toward Arkansas. (This is what Ms. Drury had in fact intended, but, as noted above, she also intended that he leave 192 when he reached the interstate--an instruction omitted from the permit by mistake.) If Mr. McCulloch had taken 192 east instead of west, he could have picked up Highway 80 sooner. He did not do so, and the magistrate judge found that the decision to proceed west on 192 was not an unreasonable one. The road was similar to many that Mr. McCulloch had traversed with wide loads in the past, and he had no reason to seek clarification of the permit from the state.
 
 
 8
 When Mr. McCulloch had covered about 30 miles on Highway 192, the driver of his lead escort vehicle reported by radio that a truck was approaching from the west and was not slowing down. The escort vehicle was a mile or more ahead of Mr. McCulloch at this point. McCulloch testified that upon receipt of the report of the oncoming truck he pulled over and stopped. The magistrate judge evidently did not believe that he came to a complete stop, however, and found that McCulloch was moving at 10 to 15 miles per hour when the two trucks encountered one another.
 
 
 9
 The vehicle coming from the west was a gasoline truck owned by plaintiff Watts & Durr Oil Company and driven by plaintiff George Phelps. Mr. Phelps testified that when he saw the escort vehicle, which had a light on it, he recognized the vehicle for what it was. Mr. Phelps had been going uphill at 15 or 20 miles per hour, he testified, and he acknowledged that he did not slow down at all after going by the escort vehicle.
 
 
 10
 When Mr. Phelps first saw Mr. McCulloch's oversized carrier, which filled the westbound lane and protruded over the center line,[1] he was about 150 feet away, the magistrate judge found. Mr. Phelps did not apply his brakes, but drove onto the shoulder of the road. There would have been room for the trucks to get by one another in this fashion, Mr. Phelps explained, if the shoulder had not given way under the weight of the gasoline truck. The shoulder did give way, unfortunately, and the gasoline truck rolled down a steep embankment. The truck was a total loss, and Mr. Phelps received bodily injuries from which, because of his age (which was 72 at the time of the accident), he never fully recovered. Mr. McCulloch's truck and its cargo were not damaged at all, and apparently never came in contact with the gasoline truck.
 
 II
 
 11
 Kentucky follows the doctrine of comparative negligence, under which "liability should be assessed in relation to fault and ... the extent of liability should be determined by the extent of the fault." Dix & Associates v. Key, 799 S.W.2d 24, 27 (Ky.1990). Tortfeasors who are not actually defendants must be construed as such in the apportionment of fault. Id. at 28.
 
 
 12
 In the case at bar the magistrate judge found that the Kentucky Transportation Cabinet was largely at fault for the accident. If the Cabinet's employee had not made the mistake she did in specifying the route Mr. McCulloch was to follow, the magistrate judge pointed out, there would have been no accident. The route that Ms. Drury intended to specify was safer, presumably, than the one Mr. McCulloch took.
 
 
 13
 Mr. Phelps was partly at fault, the magistrate judge found, because of his failure to reduce his speed after sighting the escort vehicle and because of his failure to stop when he reached the oversized carrier of which the escort vehicle had provided warning. "Had Plaintiff Phelps reduced his speed when he saw the escort vehicle," the magistrate judge observed, "and had he stopped his truck, rather than attempting to pass Defendant McCulloch's truck on a road he knew to be narrow," the accident would likewise have been avoided.
 
 
 14
 The magistrate judge found no fault on the part of Mr. McCulloch and his employer. McCulloch was clearly required to follow the routing prescribed by the permit, and his interpretation of the permit was not unreasonable. The plaintiffs contended that Mr. McCulloch had allowed the escort vehicle to get too far ahead of him, but the magistrate judge found that this was not a substantial cause of the accident.
 
 
 15
 The findings made by the magistrate judge with regard to fault or lack of fault on the part of the various actors are quintessentially factually in nature. Findings of fact may not be set aside unless clearly erroneous. Rule 52(a) Fed.R.Civ.P. The circumstance that evidence may be susceptible to more than one interpretation is not sufficient to render the factfinder's choice clearly erroneous. Bueno v. Mattner, 829 F.2d 1380, 1384 (6th Cir.1987). Unless the evidence as a whole leaves us with a definite and firm conviction that the factual findings are mistaken, we are required to accept them. Anderson v. City of Bessemer City, 470 U.S. 546, 573-74 (1985). We have no such definite and firm conviction here.
 
 
 16
 In a brief that the plaintiffs filed with the magistrate judge prior to trial, they stated that "[w]e anticipate that Defendants will rely on the routing by the commonwealth to immunize them from liability."[2] The plaintiffs continue to attack the "immunization" theory in their brief on appeal, framing the issue that we are to decide in these terms:
 
 
 17
 "Did the trial court err in determining, in effect, that issuance of an erroneous overweight/overdimensioned permit by the state absolved the private carrier/operator/permittee from liability for an accident on a roadway too narrow for passage of permittee's 'supersized' truck meeting another truck of lawful size?"
 
 
 18
 "We assert," the plaintiffs argue, "that such permit did not constitute a grant of immunity from vehicular operational negligence, although it would have granted immunity from a citation for being oversized."
 
 
 19
 The immunization theory, in our view, has been used as something of a straw man. The magistrate judge did not find that the permit authorized Mr. McCulloch to operate his oversized vehicle negligently; what the magistrate judge found, rather, was that Mr. McCulloch had not been guilty of any negligence contributing to the accident. This finding, as we have said, was not clearly erroneous.
 
 
 20
 The plaintiffs contend that Mr. McCulloch violated K.R.S. 189.310(2), which says that "[v]ehicles proceeding from opposite directions shall pass each other from the right, each giving to the other one-half ( 1/2) of the highway as nearly as possible." There is not a shred of evidence, however, that Mr. McCulloch failed to stay as far to the right as possible.
 
 
 21
 K.R.S. 189.290 requires the operator of any vehicle upon a highway to "operate the vehicle in a careful manner with regard to the safety and convenience of ... other vehicles of the highway." The plaintiffs argue that Mr. McCulloch violated this statute as well, pointing to such things as the distance between him and his escort vehicle and his decision to go west on highway 192 rather than east. Again, however, we cannot fault the magistrate judge for rejecting the plaintiffs' arguments.
 
 
 22
 A third statute cited by plaintiffs, K.R.S. 189.300, says this:
 
 
 23
 "(1) The operator of any vehicle when upon a highway shall travel upon the right side of the highway whenever possible, and unless the left side of the highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty (150) feet ahead.
 
 
 24
 "(2) The operator of any vehicle moving slowly upon a highway shall keep his vehicle as closely as practicable to the right-hand boundary of the highway, allowing more swiftly moving vehicles reasonably free passage to the left."
 
 
 25
 Bearing in mind that this statute must be read in conjunction with K.R.S. 189.270, we are satisfied that the accident cannot be attributed to any violation of K.R.S. 189.300 by Mr. McCulloch.
 
 
 26
 There is a wealth of caselaw teaching that it is prima facie evidence of negligence for a person to be over the center line of the road at the time of a collision. See, e.g., Taylor v. Cirino, 321 F.2d 279, 282-83 (6th Cir.1963), citing Kentucky cases. The cases to which the plaintiffs have invited our attention did not involve overwidth vehicles that necessarily extended over the center line, however, and none of these cases necessitates reversal of the decision rendered by the magistrate judge here.
 
 
 27
 The plaintiffs advance an imaginative constitutional argument, predicated on the proposition that it might violate various state and federal constitutional provisions for the defendants to be absolved of liability for negligence by issuance of the permit in question here. The short answer to this argument is one we have already given: The magistrate judge found the defendants free of negligence, and this finding is not clearly erroneous.
 
 
 28
 Finally, the plaintiffs argue that they are third-party beneficiaries of a contract, created by the permit, under which the defendants assumed liability for all damages resulting from the operation of the oversized vehicle whether or not such damages were caused by the defendants' negligence. This contract claim was not pleaded in the complaint, however; was not, as far as we can tell, argued in the proceedings before the magistrate judge; and was not addressed by the magistrate judge in his opinion. "It is a well-established principle of appellate review that appellate courts do not address claims not properly presented below." Chandler v. Jones, 813 F.2d 773, 777 (6th Cir.1987). We decline to address the contract claim here.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable James H. Jarvis, II, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The pavement was 19'6"' wide at this point, while McCulloch's load was 14'6"' in width. The width of the gasoline truck was 8' or 8'4"'
 
 
 [2]
 The brief went on to say that "[t]he permit, on its face, shows that liability is retained by the user of the permit." This refers to the first of three "general conditions" printed on the permit, which reads as follows:
 "The privilege granted by a special hauling permit does not authorize the holder the right to travel upon any highways or structures except those maintained by the transportation cabinet. The holder of the permit will be held responsible for all damages to highway surfaces or structures and for any damages directly or indirectly to persons or property of any kind or description which may result from the operation of the vehicle holding this special permit. All travel is at the risk of the permittee or his employees."